**Nancy W. SEARLE Individually and as Parent and Natural Guardian of Tabitha A. Long, a Minor, Plaintiffs-Appellants,**

v.

**Joe F. BRYANT, M.D., Defendant-Appellee.**

Supreme Court of Tennessee, at Nashville.

June 16, 1986.

Steve North, Nashville, for plaintiffs-appellants.

C.J. Gideon, Jr., Doramus, Gideon & Trauger, Paul C. Ney, Jr., Doramus, Gideon & Trauger, Nashville, for defendant-appellee.

OPINION

BROCK, Chief Justice.

I

The plaintiff brings this medical malpractice action against the defendant alleging that he was guilty of negligence in his treatment of her minor child.

On October 2, 1982, the plaintiff took her 11–year old daughter to the emergency room at Doctor's Hospital in Smithville, Tennessee. The patient had complaints of abdominal pain and nausea. The defendant was called in, and he performed emergency surgery to remove her appendix, which was suspected to be infected. During the surgery it was discovered that a section of the patient's ileum was inflamed and hardened. The defendant diagnosed the condition as Crohn's disease, a very serious illness.

Subsequently, the patient developed an infection of the surgical wound. To treat this infection, the defendant drained it and applied an antiseptic medication. On October 7, the defendant discharged the patient. That same evening, she was admitted at McFarland Hospital in Lebanon with complaints of abdominal pain. The defendant continued to treat her until she was discharged on October 15.

At trial, the plaintiff alleged that as a result of the defendant's negligence, her daughter developed the infection of the surgical wound, her recovery from the infection was prolonged, and she was left with a much larger and more unattractive scar than she would have had if she had received proper care. At trial, the plaintiff principally relied upon the following specific allegations of negligence on the part of the defendant in treating her daughter:

(1) failure to administer pre-operative antibiotics;

(2) improper choice of post-operative antibiotic;

(3) failure to culture the surgical wound in order to determine the proper antibiotic to administer; and

(4) discharge of the patient with a draining wound.

During the presentation of her proof, the plaintiff presented the deposition of one expert witness, Dr. Charles W. Stratton, over the defendant's objection that the witness was not competent to testify. Dr. Stratton's testimony was the only proof submitted by the plaintiff on the issue of the recognized standard of acceptable professional practice. At the close of the plaintiff's proof, the defendant moved to strike the testimony of Dr. Stratton and for a directed verdict. The trial court denied both motions after hearing arguments on them. The defendant then proceeded to present his proof.

During the presentation of his proof, the defendant again moved to strike the testimony of Dr. Stratton. The trial court granted the motion. It also reversed its earlier ruling and granted the defendant's motion for directed verdict made at the close of the plaintiff's proof on the basis that the plaintiff presented no competent proof on the issue of the recognized standard of acceptable professional practice in the area in which the defendant practiced.

The plaintiff appealed the action of the trial court in striking the testimony of her expert witness and also in directing a verdict for the defendant during the presentation of his proof. The Court of Appeals affirmed the trial court in all respects. We granted the application of the plaintiff for permission to appeal.

## II

We first consider the plaintiff's argument that the trial court erred in striking the testimony of Dr. Stratton. The defendant's attack on the admissibility of the testimony of Dr. Stratton on the issue of the recognized standard of acceptable medical practice was twofold: He contended that Dr. Stratton was not competent to testify because he was not a surgeon and did not see patients in private practice, and because he was unfamiliar with the recognized standard of acceptable professional practice in Smithville and Lebanon.

T.C.A., § 29–26–115, sets forth the elements which a medical malpractice claimant must prove in order to make out his or her case and the type of evidence which must be used to prove those elements. Section 29–26–115 provides, in pertinent part, as follows:

*"29–26–115. Claimant's burden in malpractice action—Expert testimony—Presumption of negligence—Jury*

*instructions.*—(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred."

Dr. Stratton testified that he was an infectious disease specialist and clinical microbiologist. He also testified that he was the director of the clinical microbiology laboratory at Vanderbilt University Medical Center in Nashville, Tennessee, that he performed infectious disease consultations in the infectious disease section of the department of medicine there, and that he occasionally attended in general medical services. He stated that he was experienced in the area of the treatment and management of surgical wound infections, and further stated that he was familiar with the standard of acceptable medical practice in the Middle Tennessee area. On cross-examination Dr. Stratton testified that he had never been in private practice in Middle Tennes-

see and that he did not perform surgery. He indicated, however, that he had visited many of the smaller hospitals in the Middle Tennessee area in his role as an educator.

■ We find no merit in defendant's contention that Dr. Stratton was incompetent to testify regarding the recognized standard of acceptable practice because he does not see patients in private practice. T.C.A., § 29–26–115, contains no requirement that an expert witness's knowledge of the recognized standard of acceptable professional practice have been gained by treating patients in private practice. If it is shown that such knowledge has been gained by other means, that is sufficient. Dr. Stratton's testimony that he was familiar with the standard of acceptable medical practice in the Middle Tennessee area with regard to the prevention and treatment of a surgical wound infection, that as a specialist in infectious disease he had performed infectious disease consultations, and that he had visited many of the smaller hospitals in the Middle Tennessee area in his role as an educator was sufficient, in our opinion, to render his testimony admissible. The fact that Dr. Stratton does not see patients in private practice goes to the weight of the testimony rather than its admissibility.

The defendant also asserts that Dr. Stratton's testimony evidences a lack of familiarity with the Middle Tennessee area, and in particular with Smithville, Lebanon, or a similar community, and that his testimony was incompetent for that reason. Although Dr. Stratton did not know the location of several cities in Middle Tennessee, he was familiar with Smithville and other cities. He indicated his familiarity with the recognized standard of acceptable medical practice in the smaller communities in Middle Tennessee by testifying that he knew that such hospitals have infectious disease control committees which set up standards for precautions to be taken once an infection is discovered, and that they have the capability to culture for anaerobic bacteria, a procedure, he stated which the recognized standard of care required in this case. That testimony, in addition to his

testimony that he had visited small hospitals in the Middle Tennessee area as an educator, provides sufficient support for Dr. Stratton's statement that he was familiar with the standard of acceptable practice in the Middle Tennessee area.

The defendant argues that the plaintiff's proof of the recognized standard of acceptable medical practice should have been focused on Smithville rather than the Middle Tennessee area in general. The defendant testified that he practiced at Donelson Hospital in Nashville, in addition to practicing in Lebanon and Smithville, and that he had practiced at Nashville Memorial Hospital in the past. He generally indicated that general surgeons practicing at McFarland Hospital in Lebanon, where he regularly practiced, possess and exercise no less skill than that exercised by general surgeons practicing at Donelson Hospital in Nashville. Thus, under the facts of this case, the "community in which [the defendant] practice[d] ... at the time the alleged injury or wrongful action occurred" was not limited to Smithville or Lebanon. It also included Nashville. In addition, by the defendant's own testimony, the standard of acceptable medical practice for general surgeons is the same in Lebanon as in Nashville, and Dr. Stratton's testimony that he was familiar with the standard of acceptable medical practice in the Middle Tennessee area with regard to the prevention and treatment of surgical wound infections implies that the same such standard exists throughout the Middle Tennessee area. As a result, under the circumstances of this case we are of the opinion that the testimony was admissible.

We likewise find the argument that only a surgeon was competent to testify as to the recognized standard of acceptable professional practice to be without merit. As previously indicated, T.C.A., § 29–26–115(b), states:

"No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a)

unless he was licensed to practice in the state or a contiguous bordering state *a profession or speciality which would make his expert testimony relevant to the issues in the case* and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred." (Emphasis added.)

The statute contains no requirement that the witness practice the same specialty as the defendant. The issue at trial was whether the defendant's performance in attempting to prevent the surgical wound infection and in treating it after it developed was negligent. Dr. Stratton stated that he was familiar with the applicable standards of surgeons in the prevention and treatment of surgical wound infections, and his testimony supports that statement. His expert testimony was, therefore, relevant to the issues in the case. For that reason, he was competent to testify as to those standards, even though he was not himself a surgeon. *Cf. Siirila v. Barrios,* 398 Mich. 576, 248 N.W.2d 171, 176–77 (1976) (pediatrician competent to testify concerning applicable standards of general practitioners); *Harold v. Radman,* 31 Md. App. 184, 355 A.2d 477 (1976), *aff'd* 279 Md. 167, 367 A.2d 472 (1977) (internist competent to testify as to applicable standards of surgeon).

A reading of the deposition of Dr. Stratton in its entirety strongly leads us to the conclusion that Dr. Stratton was competent to testify with regard to the recognized standard of acceptable medical practice. Therefore, the trial court erred in striking his testimony.

It follows from what we have said that the trial court also erred in directing a verdict for the defendant. The plaintiff presented competent proof of the recognized standard of acceptable medical practice, a deviation from that standard, causation, and damages sufficient to withstand defendant's motion for a directed verdict.

### III

■ The trial court's action in granting defendant's motion for directed verdict was

improper for an additional reason; the ruling came too late.

T.R.C.P. 50.01 provides in pertinent part as follows:

"A motion for directed verdict may be made at the close of the evidence offered by an opposing party or at the close of the case."

Defendant argues that although the rule does not allow a motion for directed verdict to be made by a defendant during the presentation of his proof, a trial court may rule on a motion for directed verdict made at the close of the plaintiff's proof at any time during the trial.

It is well-settled that a defendant waives his right to rely on error in the denial of his motion for directed verdict made at the end of the plaintiff's proof if he goes forward with his own proof rather than resting on the motion. *See, e.g., Nashville Ry. & Light Co. v. Henderson,* 118 Tenn. 284, 99 S.W. 700 (1906). We think that such action by the defendant also prevents the trial court from directing a verdict during the defendant's presentation of his proof even when the trial court purports only to correct his original ruling on the motion made at the end of the plaintiff's proof.

We have found no authority from this jurisdiction which is directly on point. However, we find *Overman v. Gibson Products Co. of Thomasville,* 30 N.C.App. 516, 227 S.E.2d 159 (1976), to be instructive. In that case the trial court first reserved ruling upon the defendant's motion for directed verdict at the end of the plaintiff's proof, but during the presentation of defendant's proof it granted the motion based on the evidence as it stood at the time the motion was made. The court reversed the trial court, stating:

"Obviously the trial judge can either not rule or reserve his ruling when a defendant moves for directed verdict at the close of plaintiff's evidence. However, if thereafter the defendant offers evidence, any subsequent ruling by the trial judge upon defendant's motion for directed verdict must be upon a renewal of the motion by defendant at the close of all the evidence, and the judge's ruling must be based upon the evidence of both plaintiff and defendant. The search for substantial justice and fair play dictates that a judge's ruling upon a motion for directed verdict should be made upon all of the evidence before him. Certainly a plaintiff is entitled to the benefit of evidence favorable to plaintiff that may be offered by a defendant or brought out by cross-examination of defendant's witnesses. The purpose of litigation is to seek the truth as best as that can be done." 227 S.E.2d at 162.

We approve of the reasoning of the North Carolina court and find it to be fully applicable to the circumstances of the instant case in which the trial court reversed its prior ruling rather than ruling upon the motion for the first time during the presentation of the defendant's proof. *Accord, Smith v. McNeil Corp.,* 74 Ill.App.3d 356, 30 Ill.Dec. 331, 392 N.E.2d 1376 (1979).

By purporting to rule on the motion for directed verdict as made at the end of the plaintiff's proof, the trial court denied the plaintiff the benefit of all of the evidence favorable to her which was before the court. In doing so it erred.

For the reasons set forth above, we reverse the judgment of the Court of Appeals and that of the trial court. This cause is remanded to the trial court for a new trial.

Costs incurred upon appeal are taxed against the appellee.

FONES, COOPER, HARBISON and DROWOTA, JJ., concur.