**Pearl W. COYLE, Plaintiff/Appellee,**

v.

**L.C. PRIETO, Jr., Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 8, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 4, 1991.

Duncan Ragsdale, Memphis, for plaintiff/appellee.

Larry E. Killebrew and Charles G. Walker, of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendant/appellant.

TOMLIN, Presiding Judge, Western Section.

This is a medical malpractice case. Plaintiff, Pearl W. Coyle, brought this action against Dr. L.C. Prieto, Jr. ("Dr. Prieto" or "defendant"), a pathologist, in the Circuit Court of Shelby County for damages alleged to have resulted from a misdiagnosis of plaintiff's pathology specimen. Plaintiff was mistakenly diagnosed as having lung cancer, the result of which was the unnecessary removal of a portion of her left lung. Following a jury trial, a verdict was returned in favor of plaintiff against defendant in the amount of $200,000. On appeal, defendant presents four issues for our consideration. Did the trial court err in: (1) allowing plaintiff's expert witness to testify as to the standard of care alleged to have been violated by defendant; (2) refusing to admit into evidence an x-ray report dated April 9, 1984, which was a part of the plaintiff's medical records; (3) denying defendant's motion for a directed verdict; and (4) failing to find that the jury verdict in favor of plaintiff was excessive? We resolve the first three issues in favor of plaintiff. However, we find the jury verdict to be excessive to the extent that a new trial on damages only is dictated.

Many of the underlying facts are not disputed. At the time of the questionable surgery, plaintiff was a sixty-seven-year-old retired registered nurse. In 1982 she was diagnosed as having a lymphoma, for which she underwent intensive chemotherapy. In February, 1983 she was re-evaluated and found free of cancer. In April, 1984 plaintiff was readmitted to St. Francis Hospital for another re-evaluation check-up. At that time, a chest x-ray revealed an abnormality or density in the upper lobe of her left lung. As the appropriate diagnostic procedure, her physician ordered a fine-needle biopsy from the suspicious area. The biopsy was performed by a radiologist at St. Francis Hospital. Tissue samples were mounted on several slides which were then processed. Defendant's cytotechnologist reviewed the slides prior to processing them. One particular slide, identified as No. 2897, was observed and interpreted by defendant, who made a

diagnosis that there were "several adeno-carcinoma cells present." This information was conveyed to plaintiff's surgeon, Dr. Wilhite. Shortly thereafter, Dr. Wilhite surgically removed the upper lobe of plaintiff's left lung.

Following surgery, the specimen was sent to the lab for a post-op pathological study. The specimen was examined in gross as well as in multiple sections, the latter being subjected to a microscopic examination. Dr. Ronald G. Stockstill, a pathologist at St. Francis, following the examination described above, made a diagnosis of "hemorrhagic infarction, fibrosis, vascular thickening and compromise, and reactive alveolar cells."

The following was added as a "COMMENT" to the pathology report of plaintiff's left upper lobe, post-op:

COMMENT: Review of cytology # 2897 has been made by Drs. Hayes, Prieto, Higginbotham and Stockstill, and is felt that the tumor cells identified on this cytology specimen are probably explained by the reactive pneumocytes noted in the pulmonary specimen or perhaps the proliferating endothelial cells rather than actual adenocarcinoma cells, keeping in mind that unequivocal exclusion of adenocarcinoma cannot be made.

Plaintiff was ultimately discharged from the hospital and made an uneventful recovery. This litigation followed.

## I. PLAINTIFF'S EXPERT TESTIMONY

■ As her only expert witness plaintiff offered the testimony of Dr. George Wettach. Dr. Wettach was licensed to practice medicine in the state of Missouri in 1967. Thereafter, he served a three-year residency in internal medicine and a two-year residency in cardiology. From and after 1974 Dr. Wettach practiced as a critical-care specialist in either a medical intensive-care unit or cardio-care unit, or as an emergency-room physician in both Missouri and California.

Defendant objected to the testimony of plaintiff's expert medical witness. The objection was overruled and his testimony was admitted. It would appear that plaintiff's case, therefore, stands or falls on the correctness of the trial court's ruling, for in medical malpractice cases it is ordinarily required that negligence and causation be proven by expert medical testimony. *See* T.C.A. § 29–26–115(b).

The record reflects that defendant is a board-certified pathologist in both clinical pathology and pathological anatomy. At the time of trial he had been a practicing pathologist for forty-three years.

Defendant objected to Dr. Wettach's testimony on the grounds that considering the requirements set out in T.C.A. § 29–26–115, as an out-of-state physician who practiced in the speciality areas of internal medicine and emergency-room practice, Dr. Wettach was not qualified to testify as to the standard of care of a pathologist in Tennessee.

During the *voir dire* of Dr. Wettach, he testified that he had participated in the work-up of perhaps two hundred patients with lung cancer, that he was familiar with the standard of care for arriving at a diagnosis of adenocarcinoma in lungs; that he was familiar with the standard of care in Memphis; that the standard of care in Memphis in the medical community was similar to that in St. Louis; that he was familiar with the way the medical profession goes about arriving at a diagnosis; that he was competent to testify about the standard of care for a pathologist in arriving at a diagnosis; that because of the network of medical information existing at the time of trial, the standard of care was pretty much uniform throughout the country; and finally, because of his training, education, and experience, he was competent to render an expert opinion about the manner and method in which the defendant arrived at his diagnosis. He stated that he arrived at his position by reviewing the x-rays in the patient's medical file, the patient's history, and the physical; and in addition, by reading some of the depositions taken in the case.

T.C.A. § 29–26–115 (1980) provides as follows:

**Claimant's burden in malpractice action—Expert testimony—Presumption**

of negligence—Jury instructions.—(a) in a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred.

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

(c) In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant. Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(d) In a malpractice action as described in subsection (a) of this section, the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.

The basis of defendant's objection to Dr. Wettach's qualifications as an expert is found in subsection (b) of the above-quoted Code section. Defendant cites as authority for his position the recent case of *Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn.1987). In *Cardwell*, two of the experts who testified for plaintiff—one an orthopedic specialist and the other a neurologist—attempted to testify concerning the standard of care of an osteopath in administering manipulative treatment to a person in plaintiff's condition. The trial court did not permit either physician to testify as to the standard of care required of an osteopath in the circumstances of the case presented.

The orthopedist testified that he was not familiar with the practice and types of treatment administered by an osteopath, and the neurologist conceded that he had no training in the osteopathic field and that he was unfamiliar with that profession's standard of care. Thus, at the close of plaintiff's proof there was no admissible expert testimony on the record relevant to the standard of care in the locality of an osteopath in similar circumstances.

The trial court granted defendant's directed verdict on the medical malpractice issue, and it was affirmed by the Eastern Section of this Court. Plaintiff contended that under the waiver provision of § 29–26–115(b), the experts should have been permitted to testify. The basis for that contention was plaintiff's assertion that the standard of care under the Medical Malpractice Act is the same for osteopaths as it is for medical doctors because all the healing arts are subsumed in the practice of medicine. Thus, a minimum standard of care regarding matters of common observation of experience could be established by expert testimony of doctors of all professions covered under the act.

Noting that the trial court has broad discretion to determine the qualifications of experts, and that the court's determination will not be overturned ordinarily absent some abuse of discretion, the Supreme Court held that the contentions of the plaintiff concerning the general standard of care to which medical doctors could testify were contrary to the purpose and intent of the Medical Malpractice Act. On its facts *Cardwell* is readily distinguishable and is not sound authority for the position taken by defendant.

Plaintiff, on the other hand, relies upon the recent case of *Searle v. Bryant*, 713 S.W.2d 62 (Tenn.1986) to support her contention that the trial court was correct in permitting Dr. Wettach to testify as to the standard of care. In *Searle*, plaintiff claimed that defendant, a surgeon, had been guilty of negligence in the treatment of plaintiff's minor child following surgery. Plaintiff's sole expert witness, Dr. Stratton, testified that he was an infectious disease specialist and clinical biologist, and that he was experienced in the treatment and management of surgical-wound infections. He also testified that he was familiar with the standard of acceptable medical practice in the Middle Tennessee area, although on cross-examination he conceded he had never been in private practice in Middle Tennessee. Dr. Stratton was allowed to testify over defendant's objections. However, later in the trial, the court reversed its earlier ruling, granted defendant's motion to strike the testimony of Dr. Stratton and granted defendant's motion for a directed verdict made at the close of plaintiff's proof. Defendant in *Searle* objected to the admissibility of Stratton's testimony on two grounds: (1) he was not a surgeon, and (2) he was unfamiliar with the recognized standard of acceptable professional practice in Smithville–Lebanon area.

The Middle Section of this Court affirmed the trial court in all respects. However, in reversing this Court, the Supreme Court held that the argument that only a surgeon was competent to testify as to the recognized standard of acceptable professional practice was without merit. The Court stated further: "A reading of the deposition of Dr. Stratton in its entirety strongly leads us to the conclusion that Dr. Stratton was competent to testify with regard to the recognized standard of acceptable medical practice." *Id.* at 65.

In the case under consideration, defendant's counsel made the following motion at the conclusion of the *voir dire* of Dr. Wettach:

Your Honor, I think for the record we should make a formal motion to exclude the testimony of Dr. Wettach on the basis that he is not qualified under Tennessee law set forth in T.C.A. 29–26–115 as a physician who practices in the specialty areas of internal medicine and emergency room practice to testify as to the standard of care of a pathologist in Memphis, Tennessee at the time of this incident.

After reading the portion of the transcript dealing with the qualifications of Dr. Wettach, in its entirety, this Court is of the opinion that he was competent to testify with regard to the recognized standard of acceptable medical practice. The objection raised by defendant goes more to the weight of the evidence rather than to its admissibility. In this state the trial judge is given wide discretion in the matter of the qualifications of medical expert witnesses, as already noted. *See Stokes v. Leung*, 651 S.W.2d 704 (Tenn.App.1982). The trial court did not err in the exercise of that discretion in this case.

It is appropriate that we consider defendant's third issue—that of the failure of the trial court to grant his motion for a directed verdict—in connection with the issue which we have just disposed of. A review of this record leads us to conclude that plaintiff presented competent proof of the recognized standard of acceptable medical practice, a deviation from that standard, causation, and damages sufficient to withstand defendant's motion for a directed verdict. We thus find this issue to be without merit.

## II. ADMISSIBILITY OF THE X–RAY REPORT

■ Defendant contends that the trial court erred in sustaining plaintiff's objec-

tion to efforts by his counsel to cross-examine plaintiff's medical expert, Dr. Wettach, concerning the contents of an x-ray report. The report was part of the plaintiff's medical records at St. Francis Hospital. The medical records were presented earlier at trial by the medical records custodian of the hospital. When plaintiff's counsel sought to introduce them, counsel for defendant objected to their introduction unless they were being presented for identification purposes only. Plaintiff offered them for identification purposes only and they were so marked.

It should be noted that earlier in the proceedings when plaintiff's counsel sought to have admitted into evidence certain x-rays of plaintiff by the custodian of the x-ray department at St. Francis, counsel for defendant objected to their admission on the ground that they had no probative value. The x-rays were not admitted as evidence but were marked for identification purposes only.

The issue now under consideration developed when counsel for defendant sought to cross-examine Dr. Wettach, using an x-ray report from the medical records to which he had obliquely previously objected and which had been marked for identification purposes only. The trial court upheld plaintiff's objection to the use of the x-ray report.

Defendant's reliance upon *Graham v. State*, 547 S.W.2d 531 (Tenn.1977), as authority for holding the trial court in error in refusing the use of the x-ray report is misplaced. In *Graham*, the Supreme Court held that the trial court erred when it refused to admit into evidence petitioner's medical records, which included a doctor's opinion report, from Erlanger Hospital. The facts in *Graham* differ from the facts under consideration. In *Graham*, petitioner sought to have the evidence admitted through the testimony of the records custodian at the hospital, pursuant to the Uniform Business Records as Evidence Act. In the case under consideration, counsel for defendant sought to utilize a part of plaintiff's medical record that had never been introduced into evidence. The trial court was even-handed in its handling of these records, and his refusal to permit counsel for defendant to cross-examine plaintiff's witness with this identified but unadmitted document was not error.

## III. EXCESSIVENESS OF THE VERDICT

As hereinabove noted, the jury returned a verdict in favor of plaintiff in the amount of $200,000. Defendant contends that the verdict is excessive, so grossly excessive as to indicate "passion, prejudice, sympathy and caprice on the part of the jury."

██ Subsequent to the entry of judgment, the trial court overruled defendant's motion for judgment notwithstanding the verdict, new trial and/or remittitur, noting in its order that it approved the verdict in its entirety, including the amount of the award. When the trial judge has approved a verdict, the scope of review of this Court is subject to the rule to the effect that if there is any material evidence to support the award, it should not be disturbed. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn.1980); *Poole v. The Kroger Co.*, 604 S.W.2d 52 (Tenn.1980).

Insofar as damages are concerned, plaintiff presented the following scenario to the jury: At time of trial she was a sixty-seven-year-old retired registered nurse, who, at that time, was in remission following treatment for lymphoma, a type of cancer. As a result of the surgery that is the subject of this suit which plaintiff contends was unnecessary and which contention this Court affirms by this opinion, she spent twelve days in a Memphis hospital, three of those days in intensive care. She further testified that after six weeks she was back to normal. Plaintiff alone testified as to her condition at that time, stating that she occasionally experienced shortness of breath and pain in her side near the area of the incision.

There was no proof presented of any special damages, such as medical expenses or lost wages. There was no testimony of any type concerning any decreased earning capacity. No proof was presented concerning any anatomical disability or physical

impairment as a result of the surgery in question. Plaintiff's surgeon, Dr. Wilhite, testified that plaintiff could lead a normal life following the lobectomy. After reviewing this record, we are of the opinion that in light of the totality of the proof, there is no material evidence to support a verdict in the amount of $200,000. While we find nothing to indicate caprice, passion, or prejudice on the part of the jury, we do find the verdict to be excessive.

Furthermore, in light of the proof adduced, we are of the opinion that rather than attempt to substitute our judgment for that of the jury, justice would be best served if a new trial were to be had on the issue of damages alone.

Accordingly, except as to the issue of plaintiff's damages, the judgment of the court below is in all respects affirmed. This cause is remanded to the Circuit Court of Shelby County for a new trial as to damages alone. In the exercise of our discretion, costs on appeal are taxed one-fourth to plaintiff and three-fourths to defendant, for which execution may issue if necessary.

HIGHERS, FARMER, JJ., concur.