IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2024 Session

**DALLAS K. HURLEY, JR. V. RYAN B. PICKENS ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. 3-470-16      Deborah C. Stevens, Judge**

_____

**No. E2023-01610-COA-R3-CV**

_____

In this healthcare liability action, the trial court excluded the plaintiff's proffered expert witness after concluding that the witness failed to satisfy the competency requirements in Tenn. Code Ann. § 29-26-115(b). Discerning no abuse of discretion, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

D. Scott Hurley, Knoxville, Tennessee, for the appellant, Dallas K. Hurley, Jr.

Edward Gibson White, II, and Joshua Jay Bond, Knoxville, Tennessee, for the appellees, Ryan B. Pickens and University Urology, P.C.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This health care liability action concerns alleged breaches of the standard of care related to post-surgical care provided to Dallas K. Hurley, Jr. in January 2014. In his complaint filed against Dr. Ryan B. Pickens and University Urology, P.C. (collectively, "the Defendants") on October 14, 2016,[1] Mr. Hurley alleged that he was admitted to the University of Tennessee Medical Center on January 14, 2014, for "a robotic cystectomy (removal of urinary bladder) and an ileal conduit (for diversion of urine) and [a] urostomy

_____

[1] Mr. Hurley previously filed a complaint against the Defendants on May 12, 2015. That complaint was voluntarily dismissed without prejudice pursuant to Tenn. R. Civ. P. 41 on October 16, 2015. Thereafter, the Defendants appealed, and this Court affirmed the trial court. *Hurley v. Pickens*, 536 S.W.3d 419, 420 (Tenn. Ct. App. 2016).

(artificial opening) by Dr. Ryan B. Pickens." Instead, Dr. Pickens performed a radical cystectomy that included the removal of Mr. Hurley's bladder, bilateral pelvic lymph nodes, and prostate.

After waking from the surgery on January 14, 2014, Mr. Hurley experienced several post-surgical complications, including severe abdominal pain, rapid heart rate, nausea, and vomiting. These complications continued through January 18, 2014. According to Mr. Hurley, he told his nurses and Dr. Pickens that he was concerned that these were symptoms of a bowel perforation, but Dr. Pickens considered them to be "normal" post-operative complaints. On January 17, 2014, Mr. Hurley was diagnosed with septic shock, renal failure, and respiratory distress. Dr. Pickens performed an emergency surgery the following day that revealed two bowel perforations "with a mass fecal spillage into" Mr. Hurley's abdominal cavity and organs. Mr. Hurley alleged that he remained in a coma and was in critical condition in the intensive care unit for approximately three weeks and that he required two additional surgeries to address catastrophic results from the sepsis.

The Defendants filed an answer denying that they breached the standard of care. They averred that Dr. Pickens thoroughly discussed with Mr. Hurley the risks associated with the anticipated surgical procedure. The Defendants further averred that, prior to becoming septic late in the evening on January 17 or early January 18, Mr. Hurley displayed no symptoms of a bowel perforation.

Thereafter, Mr. Hurley disclosed that he intended to call Dr. W. Shannon Orr as an expert to testify at trial about the Defendants' standard of care violations relating to the medical care he received between January 14, 2014, and January 17, 2014. The Defendants deposed Dr. Orr on July 12, 2022. He testified that he was licensed to practice medicine in Mississippi and obtained that license in 2011 while he was a resident at the University of Tennessee Medical College in Memphis. He stated that he obtained that license to "moonlight[] in an emergency room when I was [a] resident—and in the lab doing research, in Sunflower County [Mississippi], about an hour south of Memphis, hour and a half south of Memphis." In July 2013, Dr. Orr completed his residency and entered a fellowship program in surgical oncology at M.D. Anderson in Texas. He was in the fellowship program from July 2013 through June 2015. Dr. Orr stated that he could not remember how often during his fellowship training he returned to Mississippi to practice in the emergency room: "I – I want to say maybe I did once over a Christmas holiday, but I'm – I'm not – I – I – I don't . . . . I do remember coming back and forth, and sometimes I would cover the ER. I may have done it once."

After completing his fellowship program in Texas, Dr. Orr returned to Mississippi. At the time of the deposition, he was a practicing surgeon in Mississippi with board certification in both surgery and complex surgical oncology. He worked at the University of Mississippi Medical Center as an associate professor of surgery and division chief of surgical oncology—a role he had been in since 2015.

Approximately nine months after Dr. Orr's deposition, the Defendants filed a motion to exclude his testimony because he did not meet the statutory competency requirements. Mr. Hurley opposed the motion and filed a declaration of Dr. Orr to support his argument that Dr. Orr met the competency requirements. In the declaration, Dr. Orr provided additional information about his experience as an emergency room physician. He stated that, "from June of 2011 to June 2013, as part of my practice, I managed post-operative patients that would come through the emergency room at South Sunflower Hospital in Indianola, Mississippi, and I often treated patients with infections and septic processes."

After hearing arguments on the motion, the trial court entered an order excluding Dr. Orr's testimony, finding that he was:

> not competent to provide expert testimony against the Defendants . . . because he has failed to establish that he meets the criteria set forth in Tenn. Code Ann. section 29-26-115(b) . . . [as] Dr. Orr was not practicing a profession or specialty which would make his testimony relevant to the issues in the case during the relevant time frame.

Shortly thereafter, the Defendants filed a motion to dismiss the complaint. The trial court entered an order on October 24, 2023, granting the motion to dismiss because the exclusion of Dr. Orr's testimony meant that Mr. Hurley "ha[d] no ability to present a *prima facie* case before the jury."

Mr. Hurley appealed and presents the following issue for our review: Whether the trial court abused its discretion in determining that Dr. Orr was not competent to testify under Tenn. Code Ann. § 29-26-115(b).

STANDARD OF REVIEW

Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony generally fall within the broad discretion of the trial court. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005). Therefore, we review a trial court's decision "to accept or disqualify an expert medical witness . . . under the abuse of discretion standard." *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011). "'A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted)). In line with this principle, our Supreme Court has held that "[a] trial court abuses its discretion when it disqualifies a witness who meets the competency requirements of section 29-26-115(b) and

excludes testimony that meets the requirements of [Tenn. Rs. Evid.] 702 and 703." *Shipley*, 350 S.W.3d at 552.

## ANALYSIS

Tennessee Code Annotated section 29-26-115(a)[2] requires a plaintiff in a health care liability action to "prove the applicable standard of care, a deviation from the standard of care, and an injury caused by the deviation from the standard of care." *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020). These requirements must be proven by expert testimony. *Shipley*, 350 S.W.3d at 537.

The competency requirements for a proffered expert medical witness to testify in a health care liability action are set forth in another section of the statute:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. . . .

Tenn. Code Ann. § 29-26-115(b). When interpreting this language, our Supreme Court held that the statute requires that an expert witness in a health care liability action satisfy three requirements to be competent to testify:  (1) be licensed to practice in Tennessee or one of its eight contiguous bordering states, (2) practice a profession or specialty that would make the witness's expert testimony relevant to the issues in the case, and (3) have

---

[2] Tennessee Code Annotated section 29-26-115(a) provides as follows:

> In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

practiced this profession or specialty in one of these states during the year preceding the date of the alleged injury or wrongful act.[3] *Shipley*, 350 S.W.3d at 550.

Focusing on these requirements, we turn to the evidence in the record pertaining to Dr. Orr's competency. Dr. Orr testified that he obtained his license to practice medicine in Mississippi in 2011, and he maintained that license during his residency at the University of Tennessee at Memphis,[4] which ended in June 2013. Furthermore, until at least June 2013, he practiced in the medical profession by moonlighting in the emergency room of a rural Mississippi hospital. The parties, therefore, agree that Dr. Orr satisfied the first and third requirements of Tenn. Code Ann. § 29-26-115(b).

The parties' dispute focuses on the second competency requirement—whether Dr. Orr practiced a profession or specialty that would make his expert testimony relevant to the issues in the case. Our Supreme Court has stated that, to satisfy this requirement, it is not necessary that the proffered expert practice the same profession or specialty as the defendant. *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986). Instead, the statute requires that a court "look carefully at the particular issues presented in the case to determine if [the proffered expert] practices a profession or specialty that would make the expert's testimony relevant to those issues." *Shipley*, 350 S.W.3d at 556.

The issues in this case relate to whether Dr. Pickens's post-surgical monitoring and treatment of Mr. Hurley deviated from the applicable standard of care. The Defendants contend, and the trial court found, that Dr. Orr failed to provide any evidence that his experience "moonlighting" in an emergency room would make his testimony relevant to those issues. Mr. Hurley, on the other hand, contends that Dr. Orr did provide evidence that his emergency room experience would make his testimony relevant because he stated that he managed post-operative patients that would come into the emergency room and that he often treated emergency room patients who had infections and septic processes.

The case *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), provides guidance on this issue. In that case, Dr. Williams, a general surgeon, performed abdominal surgery on Ms. Shipley in January 2002. *Id.* at 532. Ten months later, on November 17, 2001, Ms. Shipley called Dr. Williams complaining that she had abdominal pain and a sore throat. *Id.* Dr. Williams advised Ms. Shipley to contact her office to schedule an appointment for the beginning of the following week but to call back sooner if the pain worsened or she developed a fever. *Id.* The next day, Ms. Shipley called Dr. Williams and complained of

---

[3] The Tennessee Supreme Court also held that "[a]ny challenge to the admissibility of testimony from a medical expert who is competent to testify under section 29-26-115(b) can be made based on" Tenn. Rs. Evid. 702 and 703. *Shipley*, 350 S.W.3d at 550.

[4] The Tennessee Supreme Court has held that a proposed expert who was exempt from licensure requirements because he was participating in a fellowship program at Vanderbilt did not satisfy the licensure requirement in Tenn. Code Ann. § 29-26-115(b). *Young*, 599 S.W.3d at 573.

continued abdominal pain in addition to a fever of 102 degrees. *Id.* Dr. Williams told Ms. Shipley to go to the emergency room. *Id.*

The emergency room physician who treated Ms. Shipley diagnosed her with "abdominal pain of unclear origin and dehydration." *Id.* While Ms. Shipley was still in the emergency room, the emergency room physician spoke with Dr. Williams, and Dr. Williams participated in Ms. Shipley's treatment by requesting that the emergency room physician order a second bag of IV fluids. *Id.* at 532-33. The two doctors then decided that Ms. Shipley would need to be reexamined by Dr. Williams. *Id.* at 533. Thus, Ms. Shipley's discharge instructions informed her to call Dr. Williams's office to schedule follow-up care. *Id.* Ms. Shipley alleged that she called Dr. Williams's office several times to schedule follow-up care, but she was informed that Dr. Williams would not see her because "it was a non-surgical matter." *Id.* A couple of days later, Ms. Shipley returned to the emergency room and was diagnosed with "acute sepsis, pneumonia, hypotension, acute renal failure, and abdominal pain." *Id.*

Ms. Shipley sued Dr. Williams and intended to call Dr. Shaw as one of her expert medical witnesses. *Id.* Dr. Shaw was a board-certified emergency room physician with thirty-three years of experience. *Id.* at 533, 556. The trial court excluded Dr. Shaw's testimony, finding that he "d[id] not practice in a specialty that [was] relevant to the standard of care issues in this case." *Id.* at 534. The Tennessee Supreme Court disagreed. *Id.* at 557. In making its determination, the Court emphasized that the allegations in the case did not relate to surgery performed by Dr. Williams, but rather to whether she "provided appropriate and timely follow-up care under the circumstances presented, including Ms. Shipley's medical condition at the time she presented to the emergency room the first time." *Id.* at 556-57. Thus, the Court concluded that Dr. Shaw was qualified to testify that "he was familiar with the standard of care applicable to a surgeon for the limited area of the standard of communication between a referring doctor and an emergency room doctor, and the apportionment of responsibility for deciding whether the patient should be admitted, and how, when, and by whom a patient should receive follow-up care" because that testimony was probative and relevant to the issues presented in the case. *Id.*

The issues presented in the present case are distinguishable from those presented in *Shipley*. Unlike the plaintiff in *Shipley*, Mr. Hurley's negligence allegations do not relate to follow-up care that included presenting to an emergency room months after Dr. Pickens performed the cystectomy and discharged Mr. Hurley from the hospital. Rather, his negligence allegations relate to Dr. Pickens's monitoring of Mr. Hurley and the treatment he provided while Mr. Hurley remained in the hospital in the days immediately following the surgery. In particular, Mr. Hurley's negligence allegations pertain to whether Dr. Pickens failed to timely implement interventions, such as performing a CT scan or surgical exploration of the surgical site, that would have prevented a significant amount of the fecal spillage that caused Mr. Hurley's post-surgical complications. Relevant to these issues, Dr. Orr was expected to testify that it was his opinion that Dr. Pickens deviated from the

standard of care by failing to implement interventions "no later than the morning of the 17th of January."

Although Dr. Orr stated that he "dealt with post-operative patients who presented to the emergency room, and he often treated patients with infections and septic processes," he provided no evidence that, while moonlighting in the emergency room, he was responsible for monitoring admitted post-surgery patients for sepsis. Indeed, as the trial court emphasized, Dr. Orr admitted that he had no admitting privileges during the relevant time period. Dr. Orr's testimony simply failed to establish that his emergency room experience qualified him to testify as an expert about the standard of care for an attending surgeon monitoring a still admitted, post-surgical patient for sepsis.

We find this case to be similar to *Mitchell v. Jackson Clinic, P.A.*, 420 S.W.3d 1 (Tenn. Ct. App. 2013). In *Mitchell*, the plaintiffs filed a health care liability action against the defendants for the care they provided to the plaintiffs' daughter, Lauren. 420 S.W.3d at 3. On appeal, this Court reviewed the trial court's exclusion of an emergency room physician proffered by the plaintiffs, and we summarized the pertinent facts as follows:

> The relevant factual averments in the complaint are that, on April 26, 2003, Lauren's nurses observed that she was jaundiced. Dr. Payne investigated the report of jaundice on April 27, 2003, by ordering blood drawn for a total bilirubin count. On April 27, Lauren's bilirubin count was 10.1. On April 28, 2003, Dr. Woods assumed responsibility for Lauren's care, and ordered a second bilirubin level blood test. According to the complaint, the April 28th blood work revealed that Lauren's bilirubin level had risen to 12.3. Without further examination, the complaint avers that Dr. Woods discharged Lauren from the hospital, while she was still jaundiced. The record indicates that an infant's bilirubin level normally peaks at approximately seventy-two hours after birth. Consequently, the alleged standard of care requires that infants, presenting with jaundice, should have bilirubin tests at least every twenty-four hours until the levels trend downward. Because Lauren's bilirubin level was, in fact, rising when she was discharged by Dr. Woods (at about fifty-six hours post delivery), the Appellants argue that the care provided to Lauren was below the applicable standard of care.

*Id.* at 3-4. We noted that:

> The only requirement that is at issue in this appeal is whether Dr. Winbery [the plaintiffs' proffered expert] is competent to testify because he is an emergency room physician and the Appellees are board certified pediatricians. Appellees assert that he is not competent to testify as to the applicable standard of care or its alleged breach because Dr. Winbery does not practice a profession or specialty that would make his testimony relevant

to the issues in the case. This is the same statutory requirement that was at issue in *Shipley.*

*Id.* 7.

Applying the framework set forth in *Shipley*, the *Mitchell* court determined that the averred issues and claims involved "the recognized standard of professional care for pediatricians providing care to neonates with jaundice and hyperbilirubinemia." *Id.* at 8. As relevant to these issues, the proffered expert was expected to testify regarding "jaundice, bilirubin metabolism, bilirubin encephalopathy, and the standard of care under the American Academy of Pediatrics' Guidelines for jaundice." *Id.* at 11. The court noted that the proffered expert had "seen numerous cases of jaundice in infants" and that he "had some experience and practice in pediatrics based upon his residency in this field." *Id.* The problem with his qualification to testify, however, was that he did not practice in that area during the year preceding the alleged negligent acts. *Id.* Instead, he practiced as an emergency room physician, and his experience with newborns in the course of that practice was "usually limited to diagnosis and treatment for addiction caused by the mother's drug abuse[, making] his expertise . . . the area of toxicology." *Id.* The court acknowledged that a proffered expert need not practice the same specialty as the defendants, but it concluded that the trial court did not abuse its discretion in excluding the expert's testimony based on the foregoing facts because:

> there is simply no evidence to support a finding that Dr. Winbery has current or recent expertise in the field of jaundice, bilirubin metabolism, bilirubin encephalopathy, or the standard of care under the American Academy of Pediatrics' Guidelines for jaundice such that his testimony would aid the trier of fact in a determination of whether Dr. Woods or Dr. Payne deviated from the applicable standard of care.

*Id.*

In sum, we agree with the trial court's observation that Dr. Orr's resume shows that, after he completed his residency and his fellowship training in surgical oncology, he returned to Mississippi in mid-2015 and became "an accomplished and well-qualified surgeon." Like the record in *Mitchell*, however, the record in this case contains no evidence to support a finding that Dr. Orr's experience as an emergency room physician during the year preceding Mr. Hurley's surgery provided him with expertise regarding an alleged failure by an attending surgeon to diagnose post-operative complications from a specialized surgery over the course of several days of post-operative admission to the hospital. We,

therefore, conclude that the trial court did not abuse its discretion in excluding Dr. Orr's testimony pursuant to Tenn. Code Ann. § 29-26-115(b).[5]

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Dallas K. Hurley, Jr., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

[5] In his appellate brief, Mr. Hurley relies on three cases to support his contention that Dr. Orr provided evidence to support a finding that his experience as an emergency room physician qualified him to testify to the issues in this case: *Searle v. Bryant*, 713 S.W.2d 62 (Tenn. 1986), *Stokes v. Leung*, 651 S.W.2d 704 (Tenn. Ct. App. 1982), and *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, No. M2016-02374-COA-R3-CV, 2018 WL 3267080 (Tenn. Ct. App. June 29, 2018). We note that *Searle* and *Stokes* predate the analysis promulgated by the Tennessee Supreme Court in *Shipley*. Furthermore, neither of the proffered experts in those cases were physicians whose experience during the year preceding the alleged negligent conduct consisted of occasionally moonlighting in an emergency room. Rather, both proffered experts practiced a specialty that differed from that practiced by the defendant. *Searle,* 713 S.W.2d at 64 (proffered expert was an infectious disease specialist and clinical microbiologist); *Stokes*, 651 S.W.2d at 709 (proffered expert was a psychiatrist). In both cases, the appellate court concluded that the proffered expert's experience qualified them to testify. *Searle*, 713 S.W.2d at 64; *Stokes*, 651 S.W.2d at 706. These two cases, therefore, are unpersuasive. We also consider *Harmon* unpersuasive because the Tennessee Supreme Court overruled that decision in *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297 (Tenn. 2020).