Lester Vernon **WALKER** and Evelyn Walker, Plaintiffs/Appellees,

v.

Dr. Robert L. **BELL** and Dr. Robert W. Ikard, Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 9, 1991.

Permission to Appeal Denied by Supreme Court April 6, 1992.

Larry H. Snedeker, John E. Rodgers, Sr., Lackey, Rodgers, Price & Snedeker, Nashville, for plaintiffs/appellees.

Gary A. Brewer, Parks T. Chastain, Brewer, Krause & Brooks, Nashville, for defendant/appellant Dr. Robert L. Bell.

C. Hayes Cooney, John B. Carlson, Watkins, McGugin, McNeilly & Rowan, Nashville, for defendant/appellant Dr. Robert W. Ikard.

## OPINION

CANTRELL, Judge.

In this medical malpractice action against two different specialists, each of the defendants filed a motion for summary judgment and supported it with his own affidavit saying he complied with the standard of care. The plaintiff did not file any countervailing affidavits. Nevertheless, the trial judge overruled the motions. We hold that the record shows actual disputes of material facts which make summary judgment improper.

### I.

Dr. Robert L. Bell, a specialist in nuclear medicine, ran a bone scan on the plaintiff Lester Vernon Walker, and filed a report indicating an abnormality in the tenth rib on Mr. Walker's right side. Since surgery for a biopsy was contemplated, Dr. Bell also marked the location of the abnormality on Mr. Walker's body.

Dr. Robert W. Ikard, a thoracic surgeon, performed the surgery. He relied on Dr. Bell's written report and on a conversation he says took place prior to the operation, in which Dr. Bell told him the abnormality was in the right tenth rib. (Dr. Bell denied having that conversation with Dr. Ikard.) When Mr. Walker was placed in position for the operation, Dr. Ikard ignored the mark on the plaintiff's body because it covered an area in the muscle between two ribs. Instead he made his incision over the tenth rib. When the tenth rib appeared to be normal, Dr. Ikard had the anesthetist read him Dr. Bell's report. Being reassured by the report, and aware that in a significant number of cases an abnormal rib looked perfectly healthy, Dr. Ikard removed a nine centimeter section of the tenth rib. Unfortunately, that rib not only

looked perfectly normal; it was, in fact, normal.

Mr. Walker continued to have pain in his rib area and returned to the hospital approximately ten days later. Another bone scan by Dr. Bell revealed that the abnormality actually lay in the right ninth rib. Dr. Ikard then removed a 5.5 centimeter segment of that rib. Subsequent tests proved that the ninth rib contained the abnormality.

## II.

Mr. Walker filed this action against both Dr. Bell and Dr. Ikard. The complaint alleged that Dr. Bell deviated from the "accepted medical practice and community standards by negligently marking the wrong rib...." Dr. Ikard was accused of "negligently extracting the wrong rib."

In time, both defendants filed motions for summary judgment. Dr. Bell filed his own affidavit in support of his motion. He said:

"I conducted the bone scan in accordance with the standard of medical care applicable in this community and similar communities and identified the problem area for surgery.

I am familiar with the standard of medical care attributable to a medical doctor in my area of practice in this community and in similar communities and, at all times, I acted in compliance with that standard and the dictates of conscience."

Dr. Ikard's affidavit said:

"I am fully and thoroughly familiar with the standard of care as it applied to general, thoracic and vascular surgeons at Davidson County, Tennessee in March and April of 1989. That standard of care requires that the surgeon rely upon objective test interpretations made by qualified nuclear medicine specialists in so far as the selection of precisely what, or where, surgical biopsy is to be performed. The standard also requires that the surgery be performed carefully, and that the patient be monitored by the surgeon to determine if operative complications do, or do not, exist. The standard of care did not and does not require the surgeon to perform independent evaluation of either the nuclear medicine tests themselves or the interpretation of those tests performed by qualified nuclear medicine specialists. That is precisely what I did in this case. My treatment of Lester Vernon Walker met or exceeded the applicable standard of care in all particulars."

## III.

Rule 56.03 of the Tennessee Rules of Civil Procedure provides that judgment may be rendered on a motion for summary judgment where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Although summary judgments were once thought inappropriate for negligence cases, they have proven particularly useful in medical malpractice cases, as the legislature has imposed a burden on plaintiffs to prove specific things, *see* Tenn.Code Ann. § 29–26–115(a)(1), which ordinarily only medical experts are capable of knowing. *See Bowman v. Henard*, 547 S.W.2d 527 (Tenn.1977). When the issue is properly raised and it is shown prior to trial that the plaintiff cannot meet that burden, the case is a proper one for summary judgment.

We note in passing that some cases are so clear that expert proof is not required. *Ayers v. Rutherford Hospital, Inc.*, 689 S.W.2d 155 (Tenn.App.1984). Mr. Walker, however, does not insist that this is a case where the common knowledge of lay persons could identify the defendants' conduct as malpractice. Therefore, we must decide if the record contains scientific or expert proof from which a jury could conclude that either or both of the defendants failed to act in accordance with the standard of care applicable to their respective specialties.

## IV.

Both doctors disclaimed any ability to pass judgment on the acts of the other. We think, however, that each defendant's testimony might be used to establish

the standard of care of the other—if the testimony is relevant to that issue. The statute does not require an expert witness to be in the same specialty as the defendant; the only requirement is that the witness be licensed in a profession that would make his expert testimony relevant to the issues in the case. *See* Tenn.Code Ann. § 29–26–115(b). Thus, in a case like this one, where two doctors are involved in the same surgical procedure—one identifying the location of the abnormality and the other performing the surgery to excise it—the standards of care must necessarily overlap. One doctor's testimony, then, may be relevant to the standard of care of the other, even where the testimony is not expressly addressed to that point.

██ Dr. Bell said in his affidavit that he conducted the bone scan in accordance with the standard of medical care in the community, a standard with which he was familiar. He did, he said, act in compliance with that standard at all times. In his deposition, Dr. Bell said the most precise method of identifying the location of the abnormality was by placing a mark on the patient's skin.

Dr. Ikard, in his affidavit, said the standard of care requires that the surgeon rely upon the tests made by nuclear medical specialists to show where a surgical biopsy is to be performed. He further said the standard of care did not require the surgeon to interpret those tests. In his deposition he said that ordinarily in a rib biopsy there is no uncertainty as to the location of the abnormality so that exploratory surgery is required and that no misidentification had occurred in the twenty or thirty rib biopsies he had performed. Concerning the mark placed on Mr. Walker's skin, Dr. Ikard said that it was of no use to him in either the first or the second operations. In the first operation the mark fell on the muscle area between two ribs. Therefore, Dr. Ikard said, it was particularly uninstructive.

We are of the opinion that, taken together, the defendants' testimony shows:

1. A trier of fact could conclude that a bone scan by a nuclear medical specialist is a method whereby an abnormality can be located with precision. In this case, Dr. Bell interpreted the bone scan as showing an abnormality in the tenth rib when the abnormality was really in the ninth rib. This fact allows the inference that Dr. Bell failed to measure up to the standard of care with regard to precision in identifying the location. Therefore, Dr. Bell's testimony that he followed the standard of care is disputed.

2. There is a conflict over whether the standard of care requires a surgeon to follow a nuclear medical specialist's report or proceed according to the marks on the plaintiff's skin. If it is the latter, Dr. Ikard failed to follow the standard of care, because he testified that he disregarded the mark. Therefore, Dr. Ikard's testimony that he followed the standard of care is disputed.

Since these disputes appear in the record, neither of the defendants is entitled to a judgment as a matter of law.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for further proceedings. Tax the costs on appeal to the appellants.

TODD, P.J., and KOCH, J., concur.