IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2002 Session

## HELEN L. ASHE v. THOMAS W. McDONALD, M.D.

**Direct Appeal from the Circuit Court for Knox County**
**No. 1-14-98     Hon. Dale C. Workman, Circuit Judge**

**FILED APRIL 18, 2002**

**No. E2000-03151-COA-R3-CV**

Jury returned verdict for plaintiff in medical malpractice action.  Defendant has appealed, raising issues of Judge's conduct, admission in evidence of depositions, failure of Court to direct verdict, failure to charge comparative fault and excessiveness of costs awarded.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Robert W. Watson, Jr., Jon G. Roach, and Nathan D. Rowell, Knoxville, Tennessee, for Appellant.

Donna Keene Holt, Knoxville, Tennessee, for Appellee.

**OPINION**

In this medical malpractice action, the jury returned a verdict against the defendant physician for the plaintiff in the amount of $150,000.00, which the Trial Court approved and awarded discretionary costs in the amount of $27,000.00.  Defendant has appealed.

Material evidence supports the following:

Plaintiff Helen Ashe, a retired nurse, age 66, saw Dr. Trent Nichols of the Internal Medical Group of UT for a routine physical in 1994, which included a pap smear.  The pathologist who read the pap smear reported back to Dr. Nichols that there were large malignant cells possibly indicating carcinosarcoma, and recommended an endometrial evaluation.  Plaintiff was contacted by her physician and told he had arranged an appointment with defendant herein, Dr. McDonald.

On Jun 21, 1994, Dr. McDonald examined Ms. Ashe, which examination revealed no obvious abnormalities. The doctor took an endometrial biopsy, ordered CT scans of the liver, stomach, abdomen and pelvis, and scheduled Ms. Ashe for hysterectomy surgery on Monday, June 27, 1994.[1]

When Ashe saw her lab requisition report, she questioned Dr. McDonald whether there could be some mistake about the pap test report, because the report indicated her age was 46 and that she had been pregnant 3 times (she had only been pregnant once); had delivered three children (she had one); the social security number had a strike-over; and had a "?" as "Menopausal". She had gone through menopause several decades earlier.

On June 24, Ashe telephone Dr. McDonald asking about her biopsy test results. He did not have them but assured her he would have them before surgery on Monday morning, June 27. When she reported to the hospital for surgery, she again asked for her biopsy results, but was told in admitting they did not have them on the admitting chart because they were down in surgery. Dr. McDonald admitted he did know, in fact, that Mrs. Ashe's biopsy was negative prior to performing the modified radical hysterectomy on her, and that he did not inform her of this, prior to surgery.[2]

The surgery included removal of the uterus, ovaries, fallopian tubes, various supporting tissues, and lymph nodes. During the surgery, all specimens removed and taken on frozen section were reported back from pathology as negative for any cancer. Further surgery was then terminated. No cancer was detected visually in Ms. Ashe's body, nor in any biopsy, tissue sample, uterine tissue, lymph nodes, or washings of the abdominal cavity tested from the surgery. Ms. Ashe suffered serious post-operative complications, and her total medical bills were $55,764.58.

A claim against the University of Tennessee was filed with the Claims Commission, which was ultimately consolidated with this case in the Circuit Court of Knox County. A summary judgment was granted to the State of Tennessee, and Defendant McDonald joined the Motion and adopted a statement of undisputed facts, maintaining that no acts of negligence were committed by UT or anyone on its staff. McDonald's counsel stipulated to the Court that they were alleging no fault against UT or its employees.

A five-day trial ensued, and at the end of the trial the Trial Judge directed a verdict in favor of the defendant on the issue of punitive damages and medical battery.

In jury trials our review is to determine whether there is material evidence to support

---

[1]The defendant's Amended Answer stated that the "sole indication for his recommendation of an operative course of treatment was the cytology report and referral of the plaintiff to him."

[2]Dr. McDonald admitted in his answer that Ms. Ashe was not told of her negative results prior to surgery.

the verdict and judgment entered thereon. *See* Tenn. R. App. P. 13(d).

Defendant's first issue on appeal is whether the Trial Court erred by giving the appearance of bias and prejudice in the manner in which it conducted cross-examination of the defendant and other witnesses, and by indicating that the Court felt that plaintiff had been "wronged" by the defendant.

The defendant's Motion for a New Trial frames this issue as follows:

> The Court was in error in its manner of conducting cross-examination of the defendant and other witnesses. Further the Court illustrated prejudice in its reaction to testimony of the defendant that he was not in agreement with. Such reaction was imbedded in the minds of the jury and could not be removed. The curative instruction could not and did not remove the Judge's comments from the minds of the jury.

Tenn. R. App. P. 3(e) provides in pertinent part:

> **Initiation of Appeal as of Right.** . . . "Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."

In the case of *Boyd v. Hicks,* 774 S.W.2d 622 (Tenn. Ct. App. ), *perm. app. denied* (1989), the appellant's motion for a new trial contained only vague generalities about the manner in which the court chastised counsel, the cumulative effect of the court's *sua sponte* remarks, comments, questioning of witnesses, interjections and distracting remarks, and generally being deprived of the "cold neutrality" of an impartial court and a fair trial. For each of several incidents discussed in the case, this Court held that because the appellant had not specifically quoted the offending statements or comments in the motion for a new trial, it was not properly preserved for appeal, and therefore deemed waived. Tenn. R. App. P. 3(e). The Court also rejected appellant's argument that remarks made by the Court outside the presence of the jury were indicative of any judicial prejudice that could have affected the verdict. In this case, appellant's Motion for a New Trial is strikingly similar to the motion held defective in *Boyd.* In holding the issue had been waived, the *Boyd* Court observed at page 627 of the Opinion:

> Appellants do not point out how these remarks could have prejudicially affected the verdict of the jury, and no means occurs to this Court whereby prejudice could have resulted. If the remarks were regarded by appellants as evidencing judicial prejudice, the remedy was a motion for recusal or mistrial, neither of which appears in the record. Moreover, no reference to the specific behavior of the Trial Judge is found

in the motion for a new trial.

In this case, our review of the record does not reveal that defendant made any motions for recusal or a mistrial.

Due to the nature of the issue, we have nevertheless, reviewed the record to determine if there has been any prejudice to the judicial process. *See* Tenn. R. App. P. 36(b). The Trial Court acknowledged to counsel that he became impatient with the long trial and regretted statements that he made during the course of trial. He also instructed the jury to disregard his remarks or his questioning of the witnesses. Moreover, we note that defendant and his counsel were not singled out for the Judge's arguably unprofessional remarks. There are examples of similar remarks being directed toward the other counsel.

Challenging a judge's impartiality requires a party to come forward with evidence that would prompt a reasonable, disinterested person to believe the judge's impartiality might reasonably be questioned. Tenn. S.Ct. Rule 10, Canon 3(E)(1). Impartiality involves personal bias against the litigant, not the judge's personal opinion about the legal or social issues of the case. *Davis v. Dept. of Employment Security*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). In this case, the Judge's remarks were directed at both parties, and any improper comments are presumed cured by appropriate instruction. We conclude that appellant has not met his burden of overcoming the presumption that the jury followed the instructions that were given. Jurors are presumed to understand and follow the Trial Court's instructions, and a complaining party has the burden to show otherwise. *Bass v. Barksdale*, 671 S.W.2d 476, 489 (Tenn. Ct. App. 1984).

A trial judge may question a witness to clarify testimony. *Bond Brothers v. Spence*, 279 S.W.2d 509, 513 (Tenn.); *Ching-Ming Chen v. Advantage Co., Inc.,* 713 S.W.2d 79, 82 (Tenn. Ct. App. 1986); *Loeffler v. Kjellgren*, 884 S.W.2d 463, 474 (Tenn. Ct. App. 1994). While a judge may have a duty to ask clarifying questions, the Court must exercise prudence, and remarks made before a jury should be cautious and circumspect. *State ex. Rel. Com'r v. Williams*, 828 S.W.2d 397, 403 (Tenn. Ct. App. 1991).

The next issue is stated as follows:

Whether the Trial Court erred by allowing the reading of discovery depositions for proof by plaintiff's attorneys of immune doctors who were deposed for discovery purposes only in this case, while the State of Tennessee, the employer, was a defendant.

These doctors were pathologists employed by UT in the Pathology Department, who were involved with interpreting Ms. Ashe's pap smear test results. They were deposed by the plaintiff regarding pathology reporting procedures, handling of specimens and practices and experiences of the UT pathology department, and about any conversations they had about the care of Dr. Nichols or Dr. McDonald. Counsel for McDonald was present for these depositions, and had

opportunity to ask questions, but did not. Neither party listed these doctors as experts, pursuant to Tenn. R. Civ. P. 26.02(4) and the Trial Court ruled they were fact witnesses who had direct knowledge and involvement in this case, but were not experts for the purposes of exclusion under the Rule. Additionally, the Court also found that under the exceptional circumstances of the case as he understood them, he felt it was important for the jury to hear all of the testimony of one of these witnesses in the interest of justice exception of Tenn. R. Civ. P. Rule 32.02(3)(E). McDonald's counsel had the opportunity to object to the admission of these depositions at trial and to specific portions of them. The Court did exclude 25 pages of one of the depositions pertaining to matters outside of the witness's direct factual knowledge of the case. In this regard *see Brock v. Rist,* 2001 WL 767001 (Tenn. Ct. App. July 10).

Trial courts have broad discretion in matters of the admission or exclusion of evidence. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 442 (Tenn. 1992); and we will not second-guess such discretionary decisions where the trial court chose among acceptable alternatives, taking into account applicable legal principles, and did not act inconsistently with them or against the substantial weight of the evidence. *Id.*

A party who seeks exclusion of important, relevant evidence, bears the burden of persuasion. The court must balance whether the probative value of the evidence substantially outweighs the prejudice to the objecting party. Contrary to appellant's arguments, the record shows the Judge conducted a lengthy hearing to consider the parties' positions on the issue, and ultimately concluded the evidence was relevant, important for the jury to hear, and was not unduly prejudicial to defendants as balance against its probative value. Appellant complains he was not allowed to lodge objections to questions in the deposition. However, he does not point out which questions he would have objected to, only that this posed "significant problems" for him, nor has he explained how this prejudiced him. "It is incumbent upon the party raising an issue to show prejudice from the erroneous action of the trial court. This Court is not required to search the record when appellants give no reason as to why the action is erroneous." *Parker v. Prince,* 656 S.W.2d 391, 400 (Tenn. Ct. App. 1983). We hold the Court did not abuse its discretion in admitting this testimony.

Next, appellant argues the Trial Court erred by failing to charge comparative fault in accordance with *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000). We note that the Motion for a New Trial does not state against whom appellant contends comparative fault should have been charged.

A party cannot allege error for omission in a jury charge, without submitting a request setting forth the correct instructions he proposed to the court. *Jones v. Tennessee Farmers Mutual Ins. Co.,* 896 S.W.2d 553, 556 (Tenn. Ct. App. 1994); *England v. Burns Stone Co., Inc.*, 874 S.W.2d 32, 37 (Tenn. Ct. App. 1993).

Summary judgment was granted to the State of Tennessee on February 1, 2000. Thus, the State and its employees were found, as a matter of law, to be guilty of no negligence and plaintiff had no cause of action against this party. Defendant did not oppose the Motion for Summary Judgment filed on behalf of the State and, in fact, adopted the Statement of Undisputed

Facts and Memorandum in support of summary judgment. Moreover, counsel for McDonald stated in court that he was not alleging any fault at any time against the State of Tennessee or its entities. While parties may not stipulate to questions of law, stipulations within the range of possibly true facts and valid legal strategies are allowed. *Overstreet v. Shoney's, Inc.,* 4 S.W.2d 694, 701 (Tenn. Ct. App. 1999). Appellant argues that the comparative fault issue was viable because *Carroll* permitted allocation of fault to immune parties. The Trial Court, in making its ruling, stated his reasoning was based upon no proof of negligence before him by anyone at UT or the State of Tennessee, and the previous stipulation by counsel that they were not alleging any fault against the other defendants. He observed their status as immune non-parties and that *Carroll* was not involved in his ruling. Appellant has not shown how the failure to give the charge would have changed the outcome of the trial. Moreover, he did not identify against whom the jury should have allocated fault. We find this issue to be without merit. *Also see Hunter v. Burke,* 958 S.W.2d 751 (Tenn. Ct. App. 1997).

Next, appellant argues that the Court erred in failing to grant a motion for directed verdict on the plaintiff's failure to present evidence on the standard of care of the physician in the field of specialty of Dr. McDonald.

Qualification and admission of expert testimony is a matter of broad discretion by the trial court and will not be overturned absent abuse of discretion. *Coyle v. Prieto*, 822 S.W.2d 596 (Tenn. Ct. App. 1991). *Searle v. Bryant,* 713 S.W.2d 62 (Tenn. 1986) specifically held that an expert is not required to practice in the same specialty as the defendant, but need only to be able to show as an expert, he or she is sufficiently familiar with the standard of care of the profession or specialty to give relevant testimony. *Also see Ledford v. Moskowitz*, 742 S.W.2d 645 (Tenn. Ct. App. 1987); *Thompson v. Griffith*, 1988 Tenn. App. Lexis 791 (No. 1196, Dec. 7, 1988); and *Walker v. Bell*, 828 S.W.2d 409 (Tenn. Ct. App. 1991).

Plaintiff's cause of action did not include any claim that defendant was negligent in the way and manner he actually performed the surgery. In this case, plaintiff's expert, Dr. Moore, was qualified as an expert in gynecology. Dr. Moore testified that he was familiar as a gynecologist with the proper procedures for performing pap smears, processing and interpreting abnormal results, and diagnostic work-up to identify pre-cancerous and cancerous conditions. He testified that the pap smear is a screening device, but it doesn't diagnose or treat anything, but merely points to a need for further evaluation. He explained the circumstances under which he performs hysterectomies, and which cases he referred to oncological specialists. As a gynecologist, he is qualified to diagnose cancerous conditions, but would often refer the patient for treatment. His testimony was relevant to the issues in this case regarding the procedures to take in the face of a positive pap smear result, and whether the plaintiff was adequately informed of her test results.

This jurisdiction has adopted the objective standard for the burden of proof involving medical malpractice. That is what a reasonable medical practitioner would have disclosed to the patient and whether the defendant deviated from that standard. *Ashe v. Radiation Oncology Associates*, 9 S.W.3d 119 (Tenn. 1999). The issue thus becomes whether a reasonable person in the

plaintiff's position would have consented to the procedure, had they been adequately informed. *Id.* Plaintiff's expert was qualified to testify, particularly since the witness did not delve into the defendant's area of specialization. We find this issue to be without merit.

Finally, defendant argues that the Trial Court erred in awarding excessive discretionary costs for an expert witness who was not necessary, and for awarding costs associated with expert preparation.

Award of costs is within the sound discretion of the court. *Lock v. Nat'l Union Fire Ins. Co.,* 809 S.W.2d 483, 490 (Tenn. 1991). Tenn. Code Ann. §20-12-119 authorizes the court to apportion costs between litigants as, in its opinion, "the equities of the case demand." Absent a manifest abuse of discretion, this Court will generally not disturb the Trial Court's decision assessing costs. *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992). Generally, if any equitable basis appears in the record which will support the trial court's apportionment of costs, we will affirm. *See e.g., Benson v. Tennessee Valley Elec. Coop.,* 868 S.W.2d 630, 644 (Tenn. Ct. App. 1993).

Recoverable costs under the Rule are "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees." An appellant has the burden to show abuse of discretion in the Court's assessment of costs against it. Most of appellant's dispute on the issue of costs is that the fees for preparation time are not proper. He cites *Miles v. Voss Health Care Center*, 896 S.W.2d 773 (Tenn. 1995). *Miles* is a worker's compensation case, and the Court's discussion of the Rule was in the context of the charges of a vocational disability and rehabilitation expert who examined and evaluated the injured employee and testified as to his findings in court. The Court limited the fee for the expert to his time for testifying in court.

In *Stalsworth v. Grummons*, 36 S.W.3d 832 (Tenn. Ct. App. 2000), defendants were awarded costs incurred for having two physicians available as witnesses at trial, because plaintiff dismissed their malpractice action after opening statements and before proof was taken. The doctors never testified but were required to be available as experts. We interpreted Rule 54.04(2), Tenn. R. Civ. P. and quoted the *Lock* opinion as including reasonable preparation time:

> It was our intent that reasonable and necessary costs, in preparation and trial of a case, could be assessed as discretionary costs by the trial court. The awarding of such costs is a discretionary matter with the trial court.

*Id.* at 834, *citing Lock v. Nat'l Union Fire Ins. Co.,* 809 S.W.2d 483, 490 (Tenn. 1991). The *Stalsworth* Court held that under the Rule, each case must be evaluated as to costs which are reasonable and necessary:

> In light of the language of the rule and prior authority's treatment of the rule, we respectfully reject . . . that there is a "bright line" rule which limits discretionary costs

for expert witnesses to those fees incurred from actual testimony. We interpret the cases and the rule to require an individualized analysis focusing on the reasonableness and necessity of the costs requested.

*Id.* at 835. *Also se Long v. HCA Health Services of Tennessee, Inc.*, 2002 Tenn. App. Lexis 211; *Christian v. Harding*, 1993 Tenn. App. Lexis 350; *Davidson v. Davidson Corp., et al.,* 1993 Tenn. App. Lexis 514; *Moser v. Bibee*, 1993 Tenn. App. Lexis 315.

Awards of costs are sometimes viewed as part of making an injured plaintiff whole, as the equities of the case require. *Scholz v. S.B. International, Inc.,* 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000). At the post-trial hearing, the Trial Court explained its rationale for the award of costs The appellee submitted approximately $40,000.00 in costs and was awarded $27,000.00. The Trial Court concluded that it could not award exhibit preparation costs, copy charges and medical records costs. The Court explained that the $27,000.00 figure included total expert fees, deducting out part of those fees that were related to plaintiff's DNA testing proposed by the plaintiff, but it did allow a portion of expert fees to explain how DNA could be on the slide. The Trial Judge disagreed with defense counsel that preparation time for experts is not allowable, and opined that it was necessary for the experts to prepare for trial. We find no abuse of discretion in the award made by the Trial Court and affirm the award of costs.

The cause is remanded with the cost of the appeal assessed to the appellant, Thomas McDonald.

_____
HERSCHEL PICKENS FRANKS, J.