# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 19, 2008 Session

## TOMMY McDANIEL, ET AL. v. AMAL RUSTOM, M.D., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
#### No. CT-003373-04     Jerry Stokes, Judge

---

### No. W2008-00674-COA-R3-CV - Filed May 5, 2009

---

The plaintiffs filed a complaint alleging medical malpractice against emergency room physicians who treated their daughter. The defendants filed motions for summary judgment, claiming that the plaintiffs' only expert was not qualified to testify as to the recognized standard of acceptable professional practice in the defendants' profession and specialty in their community or in a similar community. The trial court granted summary judgment to the defendants, finding that the plaintiffs' expert did not meet the qualifications of Tennessee Code Annotated section 29-26-115. The plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

William B. Raiford, III, Clarksdale, MS, for Appellants

J. Kimbrough Johnson, Elizabeth T. Collins, Memphis, TN, for Appellee Amal Rustom, M.D.

Darrell E. Baker, Jr., Deborah Whitt, Susan V. Thomason, Memphis, TN, for Appellees David Piper, M.D. and Pediatric Emergency Specialists, P.C.

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

On June 13, 2003, fifteen-year-old Shantel McDaniel presented to the emergency room at Methodist Hospital - Germantown with fever, back pain, and other symptoms. Shantel was diagnosed with a urinary tract infection, given an antibiotic called Levaquin,[1] and discharged with a prescription. The following morning, on June 14, Shantel returned to the emergency room because her eyes were burning, itching, watering, and slightly red, her face was swelling, and she had a very fine rash on her back and chest. On this occasion, Shantel was examined in the emergency room by Dr. Amal Rustom. Dr. Rustom concluded that Shantel was having an allergic reaction to the medication and instructed her to stop taking the Levaquin. Dr. Rustom gave Shantel a Benadryl tablet and discharged her with a prescription for a different type of antibiotic called Septra. She also told Shantel to return to the emergency room or to see her primary care physician if her symptoms worsened within twenty-four hours.

At approximately 1:10 a.m. on June 15, Shantel presented to the emergency room at Methodist Hospital - LeBonheur with fever and a rash "all over." Shantel was examined in the emergency room by Dr. David Piper. Dr. Piper gave Shantel additional medications to treat the allergic reaction, which he believed was due to the previously prescribed antibiotics, and he recommended that she continue taking the Septra to treat the urinary tract infection. She was discharged from the emergency room at approximately 4:15 a.m.

Later that evening, Shantel returned to the emergency room at Methodist Hospital - LeBonheur with worsening symptoms, and she was admitted to the hospital and diagnosed with a rare condition known as Stevens Johnson Syndrome.[2] The Stevens Johnson Syndrome later progressed to Toxic Epidermal Necrolysis. On July 3, 2003, Shantel was transferred to the Regional Medical Center in Memphis, where she remained until her death on September 3, 2003.

On June 11, 2004, Shantel's parents, Tommy McDaniel and Willie Mae McDaniel ("Plaintiffs"), filed a complaint in Shelby County Circuit Court against numerous physicians and medical entities involved in Shantel's treatment. The only defendants at issue in this appeal are Dr. Rustom, Dr. Piper, and Pediatric Emergency Specialists, P.C., the group with which Dr. Piper practiced. Plaintiffs alleged that the defendants were negligent in administering the antibiotics and otherwise treating Shantel's condition, and they sought damages pursuant to Tennessee's Wrongful Death Act, Tenn. Code Ann. § 20-5-113. The defendants filed answers asserting that their treatment of Shantel fully conformed to the recognized standard of care for emergency room physicians practicing in Memphis and Shelby County, Tennessee.

---

[1] Shantel was allergic to Penicillin.

[2] Plaintiff's expert described Stevens Johnson Syndrome as very rare, with an incidence of "one in a million or less." He further described Stevens Johnson Syndrome as "an immunologic reaction where there's a reaction on the part of the body to foreign compounds and reduction of antibodies, destruction of the epidermis and sloughing of the epidermal tissue off of the skin – off of the dermis. The epidermis sloughs off of the dermis."

Dr. Piper and Pediatric Emergency Specialists, P.C., subsequently filed a motion for summary judgment along with Dr. Piper's affidavit. Dr. Piper's affidavit stated that he was a board certified pediatrician, fully licensed to practice medicine in Memphis and Shelby County, Tennessee, and that he had practiced in the field of pediatric emergency medicine for more than one year prior to the date of Shantel's treatment. Dr. Piper stated that he was familiar with the standard of professional practice expected of a pediatrician practicing in an emergency department in Memphis and Shelby County, and he stated that his care and treatment of Shantel complied with such standards in all respects. Dr. Piper stated that he examined Shantel for symptoms indicative of Stevens Johnson Syndrome and found no such symptoms. Dr. Piper also stated that he recommended that Shantel continue taking Septra because he believed that her allergic reaction was due to the previously prescribed antibiotics rather than Septra. In their motion for summary judgment, Dr. Piper and Pediatric Emergency Specialists, P.C., argued that Plaintiffs were unable to support their allegations of negligence with competent expert testimony as required by Tennessee Code Annotated section 29-26-115.

In opposition to the motion for summary judgment, Plaintiffs filed the affidavit of Dr. Donald Harvey Marks. Dr. Marks' affidavit stated that he was licensed to practice medicine in the states of Alabama, Mississippi, and New York, and that he was practicing medicine in Alabama during the year prior to Shantel's medical treatment. Dr. Marks further stated that he was "familiar with the acceptable standard of professional practice of physicians practicing in the emergency department in communities such as Hoover, Alabama, and Birmingham, Alabama, for patients with allergic reactions to antibiotics and symptoms such as those presented by Shantel . . . ." Dr. Marks stated that he had reviewed statistical information about Memphis and a description of the resources available to physicians in Memphis, and that, in his opinion, Hoover and Birmingham, Alabama, were similar to Memphis, Tennessee. Dr. Marks further opined that Dr. Piper and Dr. Rustom violated the acceptable standard of professional practice in communities similar to Memphis by starting and continuing Shantel on Septra. As support for his statement, Dr. Marks cited information which he stated "should have been known to any reasonable prudent physician."

The trial court subsequently entered scheduling orders requiring the parties to designate all expert witnesses they intended to call at trial. Plaintiffs identified Dr. Marks as their only medical expert and stated that they "may call Dr. Marks as an expert on emergency medicine and pharmacology." Dr. Marks' discovery deposition was taken on August 31, 2007, by the attorneys for both defendant physicians. Dr. Marks testified that he was board certified in internal medicine, and that he had previously practiced medicine in New Jersey and California. He stated that he began practicing medicine in Alabama in 2002 at a general clinic located in Hoover, which he described as a suburb of Birmingham. Dr. Marks said that he worked at the clinic one day per week and "covered" for another physician when he went on vacation. Dr. Marks explained that he continued this practice of "part-time medicine" between 2002 and 2004, but spent most of his time "doing litigation support." At the time of his deposition, Dr. Marks' practice consisted of seeing patients two to two and a half days per week at a hepatitis clinic located within a hospital, and conducting clinical research during the remainder of the week. Dr. Marks admitted that he had never practiced as an emergency room physician and that he had not worked in an emergency room since his

residency, which ended in 1983.  Counsel for Dr. Rustom then questioned Dr. Marks as to his familiarity with the standard of care as follows:

> Q.　All right. Okay.  Are you going to give an opinion as to what the standard of care required the emergency room physicians to do, even though you've never been in an emergency room?
>
> Counsel for Plaintiffs: Object to the form.
>
> A.　My opinion about the standard of care will refer to what all physicians are required to do when they encounter a drugs rash.  And that is – and the standard of care is universal, not just for emergency room physicians.  So my opinion will go to what the standard is for any physician, emergency room or not.  And I don't think that I should have to limit my opinion to what emergency room physicians are required to do, since emergency room physicians are required to adhere to the standard of care for drug induced reactions that all physicians are required to do, to do here.
>
> Q.　So then your opinion is to this is [sic] what the standard of care is of all specialists and all across the country?
>
> A.　Everywhere, Tennessee and the rest of the country.  Yes.
>
> Q.　And so is it your opinion that anyone who is a physician would adhere to the same standard of care?
>
> A.　Yes.  Any physician would adhere to the standard of care which is that, number one, based on their training they would know that if a patient has a reaction to a drug, that they need to stop the drug unless it's required for the maintenance of sustaining life.  And number two is that all physicians, including emergency room physicians in Tennessee, are required to read the prescribing information for the medicines they prescribe and follow the recommendations of the manufacturer.
>
> Q.　So your opinion isn't about what specifically is done in Memphis, it's about what's done everywhere?
>
> A.　Yes.  But it includes Memphis.
>
> Q.　Well, that would be Memphis or California or New York or Texas?
>
> A.　Birmingham.
>
> Q.　And all those other places, correct?
>
> A.　Yes.
>
> . . . .
>
> Q.　Do you have any opinion specifically as to how medicine is practiced in Memphis in the emergency room?
>
> A.　Medicine in Memphis, Tennessee – principles of medicine in Memphis, Tennessee, are the same as the principles of medicine in Paris, France.  It's universal.  If somebody has a reaction to a drug, you stop the drug.

Q. So it's not about the fact of I know how medicine is practiced in Memphis, it's your opinion this is just how medicine is practiced everywhere?

A. It is. . . .

When questioned by counsel for Dr. Piper, Dr. Marks conceded that he did not consider himself an expert in either emergency medicine or pediatrics. Dr. Marks also acknowledged that he did not consider himself competent to testify about the standard of care for an emergency room physician in Birmingham. Plaintiffs' counsel then questioned Dr. Marks as follows:

Q. Doctor, in 2002 and 2003 were you treating patients, adolescent patients, who presented to your medical clinic?

A. Yes.

Q. And – well, first of all, on June 13th, 2003, when Shantel McDaniel presented to Methodist Hospital Germantown did she have what you would consider an emergent condition?

A. Did she have what, an emergency?

Q. Yes.

A. No. She had a nonemergent condition and she used the emergency room for convenience.

Q. And would you have seen and treated patients such as Shantel McDaniel in 2002 and 2003, patients who complained of headache, fever, back pain during that time?

A. Yes.

Q. And would you know the standard of care of [sic] applicable to physicians treating adolescent patients with such complaints in Birmingham, Alabama in 2002, 2003?

Counsel for Dr. Rustom: Object to the form.

A. Yes. Actually it's independent of whether she was seen in an emergency room or not because she had a nonemergent condition.

Q. Okay. And whether or not you hold yourself out as being an expert as to all aspects of emergency care, do you believe that you know the standard of care applicable to any physician in any specialty that would be presenting – with a patient presenting with the type of symptoms that Shantel McDaniel presented on the 13th, 14th, and 15th?

A. Well, I'm no[t] claiming to be an emergency room physician, or know the standard of care for an emergency room physician for the care of a patient with an emergent condition, emergency condition. But Shantel did not have an emergency condition, so I'm perfectly able to speak on the management of her case. Yes.

Following the deposition, Dr. Rustom filed a motion for summary judgment, claiming that Dr. Marks was not qualified to testify as to the standard of care applicable to her specialty of

emergency room medicine or the standard of care applicable in Memphis or a similar community.[3] Dr. Rustom had previously testified during her deposition that she had practiced only emergency medicine since 1998. Dr. Rustom became board certified in internal medicine in 1999, but she said she had never practiced internal medicine. Dr. Piper and Pediatric Emergency Specialists, P.C., also filed another motion for summary judgment, again arguing that Plaintiffs had failed to support their allegations with competent expert testimony and further adopting the memorandum filed in support of Dr. Rustom's motion for summary judgment.

On November 26, 2007, the trial court entered an order granting summary judgment to all three defendants, finding that "no genuine issue of material fact exists in this case because the plaintiff[s'] expert, Dr. Donald Marks does not meet the qualifications of § 29-26-115." Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the appellants argue that the trial court erred in granting summary judgment in favor of the defendants. The defendants contend that summary judgment was proper because Plaintiffs' only expert was not familiar with the practice of emergency medicine in Memphis or a similar community. For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** The party seeking summary judgment has the burden of persuading the court that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). The moving party must do more than simply assert that the nonmoving party has no evidence or insufficient evidence. *Id.* at 83-84. "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84 (citing *Hannan*, 270 S.W.3d at 5). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

---

[3] Dr. Rustom further asserted that Dr. Marks was unfamiliar with the disease process involved in this case, as he admitted during his deposition that he had never seen or treated a patient with Stevens Johnson Syndrome. However, the parties do not address this issue on appeal.

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin*, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

### A. *Standards Applicable to Medical Malpractice Cases*

We begin with an examination of the requirements for establishing a medical malpractice action in Tennessee. "Medical malpractice claims have strict substantive and procedural requirements." *Hessmer v. Miranda*, 138 S.W.3d 241, 244 (Tenn. Ct. App. 2003). A patient filing a medical malpractice action has the burden of proving:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

**Tenn. Code Ann. § 29-26-115(a) (Supp. 2008).** Subject to the "common knowledge" exception, which is inapplicable in this case, plaintiffs filing medical malpractice actions cannot recover unless they produce competent expert evidence establishing each of these three statutory ingredients of their claim. *Hessmer*, 138 S.W.3d at 244 (citing Tenn. Code Ann. § 29-26-115(a); *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 92 (Tenn. 1999)). In addition, a healthcare professional must satisfy stringent requirements of licensure and practice before they are permitted to testify as to the necessary elements. *Mercer v. HCA Health Servs. of Tenn., Inc.*, 87 S.W.3d 500, 507 (Tenn. Ct. App. 2002). The medical malpractice statute provides:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

**Tenn. Code Ann. § 29-26-115(b) (Supp. 2008).** Furthermore, the health care professional offering the opinion must, like any other expert, demonstrate that he or she is qualified to render an expert

opinion and that his or her opinion will substantially assist the trier of fact. ***Church v. Perales***, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000) (citing Tenn. R. Evid. 104(a), 702).[4]

"In this day and time, patients filing a medical malpractice case should reasonably anticipate that their claim will eventually be tested by a motion for summary judgment, particularly when discovery reveals a weakness in the qualifications of their expert or in their evidence regarding the applicable standard of care or causation." ***Kenyon v. Handal***, 122 S.W.3d 743, 754 (Tenn. Ct. App. 2003). Physicians often file a motion for summary judgment accompanied by their own self-serving affidavit stating that their conduct neither violated the applicable standard of care nor caused injury that would not otherwise have occurred. ***Id.*** at 758. By doing so, the physician effectively negates the negligence allegations in the patient's complaint and shifts the burden to the patient to demonstrate the existence of a genuine, material factual dispute warranting a jury trial. ***Id.*** "Because the practitioners most often file their summary judgment motions before much discovery has occurred, the only practical alternative available to most patients is to file an expert affidavit contradicting their physician's affidavit." ***Id.*** Without opposing expert proof, patients cannot demonstrate a genuine factual dispute regarding whether the physician breached the applicable standard of professional practice. ***Id.*** Still, the patient's claim may not survive a summary judgment motion even when the patient does file an opposing affidavit. ***Id.*** at 759. It is now commonplace for medical practitioners to challenge the ability of the patient's medical expert to satisfy the mandatory qualifications in Tennessee Code Annotated section 29-26-115. ***Id.***

In deciding whether to admit expert testimony for purposes of ruling on a motion for summary judgment, the trial court employs the same standards it would use in deciding whether to admit the expert testimony at trial. ***Travis v. Ferraraccio***, No. M2003-00916-COA-R3-CV, 2005 WL 2277589, at \*5 (Tenn. Ct. App. Sept. 19, 2005) (citing Tenn. R. Civ. P. 56.06; *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n.3 (5th Cir. 1992)). "The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." **Tenn. R. Evid. 703.** "The analysis of the qualifications of the patient's medical expert most often entails examining the expert's recitation of his or her qualifications either in an affidavit opposing the motion for summary judgment or in a deposition, if one has been taken." ***Kenyon***, 122 S.W.3d at 759. Although courts have instructed attorneys to couch their medical experts' opinions in the language of Tennessee Code Annotated section 29-26-115 in order to avoid summary judgment problems, "a mere ritualistic incantation of statutory buzzwords evidences very little." ***Church***, 39 S.W.3d at 166. Therefore, when an expert's opinion is challenged, courts look to the substance of the opinion to determine whether it is based on trustworthy facts or data sufficient to provide some basis for the opinion. ***Kenyon,*** 122 S.W.3d at 759; ***Church***, 39 S.W.3d at 166. We are not to determine the weight to be given to the expert's opinion, but we do examine the opinion to determine if it has "some legally-

---

[4] "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ." **Tenn. R. Evid. 104(a).** A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue. **Tenn. R. Evid. 702.**

acceptable basis from which its conclusions could be rationally drawn." **Church**, 39 S.W.3d at 166. An expert opinion having no basis can be disregarded because it cannot materially assist the trier of fact or create genuine disputes of material fact at the summary judgment stage. **Id.**

"Under the terms of [Tennessee Code Annotated section 29-26-115] and the law of evidence generally, the trial court exercises broad discretion to determine the qualifications of experts and its determination will not ordinarily be reversed absent some abuse of discretion." **Cardwell v. Bechtol**, 724 S.W.2d 739, 754 (Tenn. 1987). "Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." **White v. Vanderbilt Univ.**, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or acted inconsistently with the substantial weight of the evidence. **Id.** In the context of an award of summary judgment, however, we must view the expert's statements in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. **Kenyon**, 122 S.W.3d at 759.

As noted, the medical malpractice statute requires Plaintiffs to prove, by expert testimony, "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." **Tenn. Code Ann. § 29-26-115 (Supp. 2008).** The defendants in this case argue that the trial court did not abuse its discretion in concluding that Dr. Marks was not competent to testify, when his testimony revealed that he had no basis for his claimed familiarity with the standard of care required of emergency room physicians.

Tennessee Code Annotated section 29-26-115 does not require that an expert witness practice in the same specialty as the defendant, so long as the expert witness demonstrates "sufficient familiarity with the standard of care" of the defendant's profession or specialty and is able to give relevant testimony on the issue in question. **Cardwell**, 724 S.W.2d at 751. In **Searle v. Bryant**, 713 S.W.2d 62, 64 (Tenn. 1986), for example, an infectious disease specialist and clinical microbiologist, Dr. Stratton, was permitted to testify regarding the standard of care for a general surgeon treating a surgical wound. Although Dr. Stratton did not perform surgery himself, he performed infectious disease consultations in a hospital's department of medicine, he occasionally attended in general medical services, and he was experienced in treating and managing surgical wound infections. **Id.** The Supreme Court rejected the defendant's assertion that only a surgeon was competent to testify as to the recognized standard of acceptable professional practice, stating:

> The statute contains no requirement that the witness practice the same specialty as the defendant. . . . Dr. Stratton stated that he was familiar with the applicable standards *of surgeons* in the prevention and treatment of surgical wound infections, *and his testimony supports that statement.* His expert testimony was, therefore, relevant to the issues in the case. For that reason, he was competent to testify as to those standards, even though he was not himself a surgeon.

*Id.* at 65 (emphasis added).

In ***Bravo v. Sumner Regional Health Systems, Inc.***, 148 S.W.3d 357, 365 (Tenn. Ct. App. 2003), this Court explained that "it is not necessary for the proffered expert to have practiced the same specialty as the defendant during the year preceding the date of the occurrence," but "it is required that he practice in a profession or specialty 'which would make the person's expert testimony relevant to the issues in the case' during the year preceding the occurrence." In ***Bravo***, the plaintiffs sued an obstetrician-gynecologist, alleging negligence in the delivery of their baby. *Id.* at 359. The plaintiffs' expert was certified in obstetrics and in gynecology, but he had not practiced obstetrics for many years. *Id.* In examining the basis for the expert's knowledge, we found it "necessary to look beyond the nomenclature of [the expert's] field of specialty" because the doctor was not actually practicing in his field of specialty. *Id.* at 365. Although we described it as "a very close issue," we ultimately concluded that the expert was competent to testify as to the standard of care required of an obstetrician because he had practiced obstetrics in the past for twenty years, he remained licensed in that specialty, and he maintained his knowledge about the standard of care in obstetrics through teaching classes at a university and attending seminars and conferences on obstetrics. *Id.* at 367.

In sum, in those cases where an expert has a sufficient basis on which to establish familiarity with the defendant's field of practice, the expert's testimony may be accepted as competent proof even though he or she specializes or practices in another field. *See, e.g.*, ***Coyle v. Prieto***, 822 S.W.2d 596, 600 (Tenn. Ct. App. 1991) (finding no abuse of discretion where the trial court allowed a critical care specialist and emergency room physician to testify as to the standard of care for a pathologist, where the expert stated that he was familiar with the standard of care for pathologists and had been involved in the "work-up" of 200 cases involving the disease at issue); ***Ledford v. Moskowitz***, 742 S.W.2d 645, 647-48 (Tenn. Ct. App. 1987) (finding that a neurologist was competent to testify as to the standard of care for a psychiatrist, where the neurologist was also certified and trained in psychiatry); ***Stokes v. Leung***, 651 S.W.2d 704, 706 (Tenn. Ct. App. 1982) (finding no abuse of discretion where the trial court allowed a psychiatrist to testify as to the standard of care for a physician specializing in internal medicine and cardiology, where the psychiatrist taught classes on the standard of care applicable to the defendant at a medical school).

However, our Supreme Court has rejected the argument that an expert can satisfy the requirements of Tennessee Code Annotated section 29-26-115 by simply testifying as to a general standard of care expected of all physicians. In ***Cardwell v. Bechtol***, 724 S.W.2d 739, 749 (Tenn. 1987), the plaintiffs sued an osteopath alleging medical malpractice and failure to obtain informed consent prior to treatment.[5] In attempting to establish the standard of care, the plaintiffs offered the testimony of an orthopedic specialist and a neurologist, but both witnesses admitted that they were

---

[5] Tennessee Code Annotated section 29-26-118 requires the plaintiff in an informed consent case to "prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities."

unfamiliar with the practices of osteopaths. *Id.* at 752. The plaintiffs urged the Supreme Court to hold that "a minimum standard of care regarding matters of common observation and experience in the healing arts can be established by the expert testimony of medical doctors for all professions covered by the Medical Malpractice Act." *Id.* at 754. The Court rejected their argument, explaining:

> [A]doption of the Plaintiffs' contentions concerning the general standard of care to which medical doctors could testify is contrary to the express provisions of T.C.A. § 29-26-115(b) and would be a significant departure from the case law of this State. The statute was enacted in part to prevent further erosion of the competency requirements for expert witnesses in malpractice actions. The statute and cases currently permit some fungibility of experts, but *where an expert is unfamiliar with the practice of another field and with its standard of care* or where material differences between schools have been shown, we do not think it would be consistent with the terms or the policy of the Medical Malpractice Act to permit the kind of generalized evidence as that proposed by Plaintiffs in this case.

*Id.* at 754-55 (emphasis added and citations and quotations omitted). The Court reiterated that the medical malpractice statute did not require an expert witness to practice in the same specialty as the defendant, but "the witness must be sufficiently familiar with the standard of care of the profession or specialty and be able to give relevant testimony on the issue in question." *Id.* at 754.

The Court of Appeals has addressed the issue before us several times as well. In ***Goodman v. Phythyon***, 803 S.W.2d 697, 698 (Tenn. Ct. App. 1990), a patient sued his ophthalmologist after the patient became agitated and uncontrollable during cataract surgery, alleging that the ophthalmologist negligently selected and used an anesthetic agent. The patient submitted expert testimony from an anesthesiologist who made "generalized statements concerning the deviation from the standard of care for medical practice in general," but he conceded that he was not familiar with the standard of care for ophthalmologists. *Id.* at 700. The Court of Appeals distinguished *Searle*, *Ledford*, and *Stokes* as cases in which "the courts accepted the testimony of medical experts in other fields as competent proof on the standard of care [because] the experts testified as to their familiarity with the defendant's field of practice and the standard of care required in dealing with the specific acts involved on the part of the defendant physician." *Id.* at 702. The Court found that the anesthesiologist's testimony "did not rise to this level" and affirmed summary judgment in favor of the ophthalmologist. *Id.*

Similarly, in ***Brown v. Kudsk***, No. 02A01-9611-CV-00291, 1998 WL 34190563, at *5 (Tenn. Ct. App. W.S. Jan. 2, 1998), we found that an expert's testimony did not "rise to the level" of establishing familiarity with the defendant's field of practice and the applicable standard of care. The defendant was a surgeon, and the expert, Dr. Sorenson, was an endocrinologist. *Id.* at *4. Dr. Sorenson stated in her affidavit, "Although I am not a surgeon, a patient who is less than 12 hours post-thyroid surgery and complaining of choking and inability to breathe warrants clinical and laboratory evaluation to rule out post-operative complications . . . . The standard of care was definitely inadequate . . . ." *Id.* at *5. This Court affirmed summary judgment in favor of the

-11-

defendant because, even though Dr. Sorenson testified as to "the standard of care for medical practice in general," she "fail[ed] to establish a basis for expertise in the field of surgery so as to overcome [the defendant's] motion for summary judgment." ***Id.***

In ***Whittemore v. Classen***, 808 S.W.2d 447, 455 (Tenn. Ct. App. 1991), a patient sued a surgeon and relied on the testimony of a radiologist, Dr. Starnes, to establish the standard of care. The Court of Appeals concluded that the testimony of Dr. Starnes was improperly admitted, stating:

> T.C.A. § 29-26-115(b) does not require that evidence as to [the] "recognized standard of acceptable professional practice" come from a physician qualified in the same specialty of medicine as that in which the alleged malpractice occurred. *Searle v. Bryant*, Tenn. 1986, 713 S.W.2d 62. However, it is required that the witness testify as to his knowledge of such standard. Qualification in radiology does not necessarily show knowledge of the standards of surgery. This *must be shown by evidence*, and it was not shown in the case of Dr. Starnes.

***Id.*** at 456 (emphasis added).

As previously noted, courts have instructed attorneys to couch their medical experts' opinions in the language of Tennessee Code Annotated section 29-26-115 in order to avoid summary judgment problems, but we also recognize that "a mere ritualistic incantation of statutory buzzwords evidences very little." ***Church***, 39 S.W.3d at 166. Consequently, when an expert's opinion is challenged, courts look to the substance of the opinion to determine whether it is based on trustworthy facts or data sufficient to provide some basis for the opinion. ***Kenyon,*** 122 S.W.3d at 759; ***Church***, 39 S.W.3d at 166.

For example, in ***Carmichael v. Bridgeman***, No. 03A01-9904-CV-00124, 2000 WL 124843, at *1-2 (Tenn. Ct. App. E.S. Jan. 26, 2000), the expert, Dr. Blake, was a pathologist, but he stated in his affidavit that he was "familiar with the recognized standards of acceptable professional practice pertaining to the practice of family medicine . . . ." Nevertheless, the Court of Appeals affirmed the trial court's decision to exclude Dr. Blake's testimony after examining the basis of his opinion, stating:

> We recognize that an expert in one specialty may, in appropriate circumstances, be sufficiently familiar with the standard of care of another specialty to render his or her testimony relevant to the resolution of an issue common to both specialties. We agree with Carmichael that *Searle* and *Stokes* are prime examples of this principle. We disagree, however, with Carmichael's assertion that the trial court abused its discretion in declining to find a commonality here. We are cognizant of the fact that Blake believes his experience as a diagnostic consultant for family practitioners renders him familiar with the standard of care required of such family practitioners. However, the claims against the defendants here arise from the evaluation and treatment of abdominal complaints. It seems to us that a pathologist's

diagnosis, being based primarily on the laboratory examination of body tissue or fluid, is a substantially more narrow one than that involved in family medicine. A family practitioner is faced with a much broader universe of potential factors to consider in rendering his or her diagnosis. We find and hold that the trial court did not abuse its discretion in disallowing Blake's testimony as to a family practitioner's standard of care.

Carmichael also relies on certain other cases to support her argument that Dr. Blake's standard-of-care testimony should have been allowed. Specifically, Carmichael asserts that the cases that have disallowed an expert's testimony did so either because the expert admitted unfamiliarity with the appropriate standard of care, see *Cardwell v. Bechtol*, 724 S.W.2d 739, 752 (Tenn. 1987) (experts in orthopedics and neurology admitted unfamiliarity with standard of care of osteopaths); *Goodman v. Phythyon*, 803 S.W.2d 697, 700 (Tenn. Ct. App. 1990) (anesthesiologist admitted unfamiliarity with the standard of care required in ophthalmology); *Johnson v. Lawrence*, 720 S.W.2d 50, 54 (Tenn. Ct. App. 1986) (a neurologist and a surgeon/family practitioner admitted unfamiliarity with standard of care required of chiropractors), or because the expert's own testimony clearly indicated an unfamiliarity with the appropriate standard of care, see *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 830 (Tenn. Ct. App. 1997) (expert's testimony revealed his belief that standard of care was premised on a national standard of care and that he had no knowledge of the relevant community); *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 163 (Tenn. Ct. App. 1984) (expert's testimony clearly revealed that he had no knowledge of the relevant community). Carmichael argues that because Blake affirmatively professed a familiarity with the applicable standard of care, and because his testimony does not clearly indicate otherwise, the trial court should have allowed his testimony.

We find nothing in the cases suggesting that an expert witness must discredit himself before the trial court may disallow his testimony. Furthermore, we find no support for the proposition that a witness' statement that he or she is familiar with the standard of care, ipso facto, renders that testimony relevant and admissible. Accordingly, we find Carmichael's arguments to be without merit.

*Id.* at *3-4. *See also, e.g.*, **Lockard v. Bratton**, No. W2007-02820-COA-R3-CV, 2009 WL 275783, at *8-9 (Tenn. Ct. App. Feb. 4, 2009) *perm. app. pending* (finding no abuse of discretion when the trial court excluded testimony from a gynecologist who stated that he was familiar with the standard of care of a surgeon simply because the surgeon was "basically providing gynecology services"); **Johnson v. Pratt**, No. W2003-02110-COA-R3-CV, 2005 WL 1364636, at *9 (Tenn. Ct. App. Jun. 9, 2005) (stating that a radiologist's "broad statement that he is 'familiar with the standard of professional practice expected of an orthopedic surgeon' is not, in itself, sufficient to qualify him to testify in this area").

Finally, in a case similar to the one before us, **Waterman v. Damp**, No. M2005-01265-COA-R3-CV, 2006 WL 2872432, at *9 (Tenn. Ct. App. 2006), the Court of Appeals found no basis for

two physicians' statements that they were familiar with the standard of care applicable to emergency room physicians. The first expert, Dr. Childs, was an orthopaedic surgeon, but he stated in his affidavit that he was "familiar with the standard of acceptable professional practice of physicians practicing in emergency departments treating orthopaedic injuries . . . by virtue of receiving numerous patients on referral from emergency department physicians . . . ." *Id.* The Court found the testimony of Dr. Childs inadmissible because his affidavit really only demonstrated his familiarity with the standard of care applicable to orthopedists. *Id.* at *9. The second expert, Dr. Easterling, also claimed familiarity with the standard of care for emergency room physicians, but during her discovery deposition, Dr. Easterling testified that she had not worked in an emergency room in a similar community for more than ten years. *Id.* at *5. The Court found that Dr. Easterling's deposition testimony "[made] clear her inability to assist in the determination of the appropriate standard of care for an emergency room doctor," as it showed "no real basis for her statements about the appropriate standard in any emergency room due to her remote emergency room experience." *Id.* at *9.

Keeping all these principles in mind, we now turn to an examination of the issues presented in this case.

### B. Dr. Piper and Pediatric Emergency Specialists, P.C.

Dr. Piper and Pediatric Emergency Specialists, P.C., filed a motion for summary judgment supported by Dr. Piper's own affidavit, in which he stated that he was a board certified pediatrician practicing in the field of pediatric emergency medicine for more than one year prior to the date of Shantel's treatment. Dr. Piper also stated that he was familiar with the standard of professional practice expected of a pediatrician practicing in an emergency department in Memphis and Shelby County, and he stated that his care and treatment of Shantel complied in all respects with such standards. In their summary judgment motion, Dr. Piper and Pediatric Emergency Specialists, P.C., argued that Plaintiffs were unable to support their allegations of negligence with competent expert testimony as required by Tennessee Code Annotated section 29-26-115.

In response, Plaintiffs submitted the affidavit of Dr. Marks, which stated that Dr. Marks was "familiar with the acceptable standard of professional practice of physicians practicing in the emergency department in communities such as Hoover, Alabama and Birmingham, Alabama for patients with allergic reactions to antibiotics and symptoms such as those presented by Shantel . . . ." However, during his discovery deposition, Dr. Marks testified that he had not worked in an emergency room since a rotation during his residency, which ended in 1983, some twenty years prior to the date of Shantel's treatment. Dr. Marks also testified that he had not received any training in pediatrics since medical school. Dr. Marks described his clinical practice in Alabama between 2002 and 2004 as "part-time medicine," in which he saw patients at a local clinic one day per week and when another physician was on vacation. Dr. Marks conceded that he did not hold himself out as an expert in either emergency medicine or pediatrics, and he admitted that he did not "hold [himself] out as competent to testify about the standard of care of an emergency room physician in Birmingham." However, he insisted that "the standard of care is universal" for "all specialists" all

across the country. Dr. Piper and Pediatric Emergency Specialists, P.C., then renewed their motion for summary judgment, maintaining that Plaintiffs failed to present competent expert testimony to support the allegations in their complaint.

Having reviewed Dr. Marks' testimony in its entirety, and viewing it in the light most favorable to Plaintiffs, we find no basis for his claimed familiarity with the applicable standard of care for physicians practicing in an emergency room. Although Dr. Marks claimed that the standard of care for treating Shantel's "nonemergent" symptoms was "universal" for "all specialists," including emergency room physicians, he failed to demonstrate any basis for knowing the standard of care of emergency room physicians. As the Court explained in *Carmichael*, 2000 WL 124843, at *3-4, the fact that an expert witness states that he or she is familiar with the applicable standard of care does not, ipso facto, render the testimony admissible. Dr. Marks' testimony was similar to that offered and excluded in *Goodman*, 803 S.W.2d at 698, and *Brown*, 1998 WL 34190563, at *5, regarding "the standard of care for medical practice in general." In *Cardwell*, 724 S.W.2d at 754-55, the Court rejected the notion that an expert from any medical profession can testify "regarding matters of common observation and experience" and concluded that "where an expert is unfamiliar with the practice of another field and with its standard of care," it would be inconsistent with the terms and policy of the Medical Malpractice Act to permit such generalized evidence.

Therefore, we find that the trial court did not abuse its discretion in concluding that Dr. Marks did not meet the qualifications set forth in Tennessee Code Annotated section 29-26-115. When Dr. Piper submitted his affidavit stating that he complied with the applicable standard of professional practice, he affirmatively negated an essential element of Plaintiffs' claim. As such, the burden shifted to Plaintiffs to "produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 83. We find that Plaintiffs did not meet their burden by submitting the opinion of Dr. Marks. Therefore, the trial court properly granted summary judgment to Dr. Piper and Pediatric Emergency Specialists, P.C.

### C.   Dr. Rustom

Dr. Rustom testified at her deposition that although she became certified in internal medicine in 1999, she had never practiced internal medicine and had practiced only emergency medicine since 1998. After Dr. Marks' discovery deposition was taken, Dr. Rustom filed a motion for summary judgment asserting that "the plaintiff[s'] only expert, Dr. Donald Marks, does not create a genuine issue of material fact because Dr. Marks is unfamiliar with the standard of care of medicine within the defendant's specialty of emergency room medicine . . . ." Dr. Rustom filed the deposition of Dr. Marks and argued that his deposition testimony clearly demonstrated that he was unable to testify regarding the standard of care for an emergency room physician. Dr. Rustom also pointed out that pursuant to the court's scheduling order, the deadline for Plaintiffs to identify experts had passed, and Plaintiffs had not identified any other medical expert.

On appeal, Plaintiffs argue that because Dr. Rustom did not file her own affidavit stating that she complied with the applicable standard of professional practice, the burden never shifted to them to produce expert testimony in support of their claim. We disagree. It is true that defendants filing a motion for summary judgment in medical malpractice actions generally support their motion with their own affidavits stating that, in their opinion, their actions did not violate the applicable standard of professional practice. *See Hessmer*, 138 S.W.3d at 244. "Affidavits of this sort effectively negate the allegations of negligence in the plaintiff's complaint and force the plaintiff to demonstrate the existence of a genuine, material factual dispute that warrants a trial." *Id.* However, a party against whom a claim is asserted may move for summary judgment "with or without supporting affidavits." **Tenn. R. Civ. P. 56.02.** A party moving for summary judgment may shift the burden of production to the nonmoving party by either: "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin*, 271 S.W.3d at 83. The moving party cannot simply assert that the nonmoving party has no evidence or insufficient evidence. *Id.* at 83-84. Rather, "[t]he moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84. "Summary judgment may be appropriate for the moving party who relies upon evidence from the nonmoving party, but only if that evidence affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn. 2008).

Here, in support of her motion for summary judgment, Dr. Rustom filed the discovery deposition of Dr. Marks and pointed to his testimony that he had not worked in an emergency room since 1983 and did not consider himself an expert in emergency medicine. Because Plaintiffs had already identified Dr. Marks as their only medical expert, this evidence demonstrated that Plaintiffs could not prove an essential element of their claim at trial, i.e., "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices . . . ." **Tenn. Code Ann. § 29-26-115(a)(1) (Supp. 2008).** In other words, Plaintiffs' only expert was not "sufficiently familiar with the standard of care of the [defendant's] profession or specialty." *See Cardwell*, 724 S.W.2d at 754. The burden then shifted to Plaintiffs to produce evidence of specific facts establishing that genuine issues of material fact existed. *See Martin*, 271 S.W.3d at 83. Plaintiffs could satisfy their burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* at 84.

In response to Dr. Rustom's motion for summary judgment, Plaintiffs filed a response pointing to Dr. Marks' affidavit in which he stated that he was familiar with the standard of care for emergency room physicians, and they also pointed to Dr. Marks' deposition testimony where he stated that he was familiar with the standard of care for any physician in any specialty treating an adolescent patient with a fever, backache, and headache. For the reasons discussed in the previous section, Dr. Marks' recitation of statutory "buzzwords" and his conclusory statement that he was familiar with the applicable standard of care did not, alone, satisfy the requirements of Tennessee Code Annotated section 29-26-115. Courts look to the substance of an expert's opinion to determine whether it is based on trustworthy facts or data sufficient to provide a basis for the opinion. *Kenyon,* 122 S.W.3d at 759; *Church*, 39 S.W.3d at 166.

Plaintiffs also argued in their response to the motion for summary judgment that Dr. Marks was qualified to testify as to the standard of care applicable to Dr. Rustom because both physicians held board certifications in internal medicine. However, as in *Bravo*, 148 S.W.3d at 365, we believe that in this case it is "necessary to look beyond the nomenclature of [the] field of specialty" because Dr. Rustom was not actually practicing in her field of specialty. Dr. Rustom testified that she did not practice internal medicine and that she had practiced emergency medicine exclusively since 1998. Dr. Marks testified that his part-time medical practice between 2002 and 2004 was limited to a general clinical setting, one day per week.

In sum, we conclude that the trial court did not abuse its discretion in finding that Dr. Marks was not competent to testify, and without expert proof as to the applicable standard of professional practice, we find that Plaintiffs failed to establish a genuine issue of material fact in order to overcome Dr. Rustom's motion for summary judgment.[6]

## V. CONCLUSION

---

[6] In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 19-20 (Tenn. 2008), Justice Koch, in his dissent, warned that the summary judgment analysis set forth by the majority would have significant effects on medical malpractice cases:

> What practical effect will this decision have on litigation in Tennessee's courts? The answer is that its effects will be significant and far-reaching. It will provide another safe harbor for those who are unprepared. In cases in which expert evidence is necessary to prove an essential element of a plaintiff's claim, such as medical malpractice cases, defendants will no longer be entitled to a summary judgment when they demonstrate that the plaintiff's expert is not qualified to render an opinion. Successfully challenging a particular expert's qualifications does not demonstrate that the plaintiff cannot prove an essential element of its case. It simply demonstrates that the plaintiff cannot establish an essential element of its case *with that expert*. Thus, rather than the litigation ending with the disqualification of the expert, it will continue while the plaintiff attempts to find yet another expert. Determining how many chances a plaintiff must be given to find a qualified expert before a case can be dismissed remains an open question.

(footnotes omitted). In this case, however, when Dr. Rustom demonstrated that Plaintiffs could not establish an essential element of their case with the testimony of Dr. Marks, she also demonstrated that Plaintiffs could not prove an essential element of their claim at trial because Dr. Marks was the only medical expert identified by Plaintiffs in accordance with the deadlines imposed by the trial court's scheduling orders.

For the aforementioned reasons, we affirm the decision of the circuit court.  Costs of this appeal are taxed to the appellants, Tommy McDaniel and Willie Mae McDaniel, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.